**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **WILLIAM P. RAMEY, III AND RAMEY LLP,** | § § § | |
| *Plaintiffs*, | § § § | |
| **vs.** | § § | **CIVIL ACTION NO. 4:26-cv-01462** |
| **JONATHAN STROUD; UNIFIED PATENTS, LLC; BLOOMBERG L.P.; AND RPX CORPORATION,** | § § § § | |
| *Defendants*. | § § | |

**UNIFIED PATENTS, LLC AND JONATHAN STROUD'S MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

**HOLLAND & KNIGHT LLP**

Cindy A. Gierhart
Cindy.Gierhart@hklaw.com

800 17th Street N.W., Suite 1100
Washington, D.C. 20006
(202) 469-5416 Telephone
(202) 955.5564 Facsimile
Attorney in Charge (*Admitted Pro Hac Vice*)

Brandon L. King
Texas Bar No. 24100613
S.D. Bar No. 3436665
Brandon.King@hklaw.com

98 San Jacinto Blvd., Suite 1900
Austin, Texas 78701
(512) 469-6126 Telephone
(512) 472-7473 Facsimile

Agnes Doyle
Texas Bar No. 24084423
S.D. Bar No. 2545474
Agnes.Doyle@hklaw.com

811 Main Street, Suite 2500
Houston, Texas 77002
(713) 244-6886 Telephone
(713) 821-7001 Facsimile

i

**Table of Contents**

I.      INTRODUCTION, NATURE AND STAGE OF THE PROCEEDING ...........................1

II.     STATEMENT OF THE ISSUES.................................................................................2

III.    LEGAL STANDARD.................................................................................................2

IV.     SUMMARY OF THE ARGUMENT ..........................................................................2

V.      LAW & ARGUMENT................................................................................................3

    A.      DEFAMATION, GENERALLY. ..........................................................................3

    B.      DEFAMATION CLAIMS BASED ON THE STROUD BLOG AND AMICUS BRIEF ARE TIME-
            BARRED..............................................................................................................4

    C.      STROUD'S LINKEDIN POSTS ARE SUBSTANTIALLY TRUE AND PROTECTED OPINION. ..........6

        1.      The LinkedIn posts are true. .................................................................7

        2.      The LinkedIn posts are substantially true. ..................................................9

        3.      The LinkedIn posts contain protected opinions. .........................................11

    D.      STATEMENTS IN AN AMICUS BRIEF ARE ABSOLUTELY PRIVILEGED UNDER THE
            JUDICIAL PROCEEDINGS PRIVILEGE. ...............................................................14

    E.      PLAINTIFFS' REMAINING CLAIMS MUST BE DISMISSED BECAUSE THEY ARE
            CONDITIONED ON DEFAMATION........................................................................16

        1.      Business disparagement should be dismissed because there is no false statement
                and Plaintiffs fail to plead special damages. ...........................................17

        2.      Tortious interference with existing and prospective business relations should be
                dismissed because Plaintiffs fail to identify a specific contract or relationship
                and there is no independent tortious act....................................................19

        3.      Common-law unfair competition by wrongful conduct should be dismissed
                because there is no underlying tort. ........................................................22

        4.      Civil Conspiracy should be dismissed because there is no underlying tort. ..............23

VI.     CONCLUSION.........................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019)................................................................................. 23

*Barrash v. Am. Assoc. of Neurological Surgeons, Inc.*,
No. 4:13-CV-1054, 2013 WL 4401429 (S.D. Tex. Aug. 13, 2013) ....................................... 18

*Baty v. ProTech Ins. Agency*,
63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) .................................... 20

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2003)................................................................................. 12

*Cain v. Hearst Corp.*,
878 S.W.2d 577 (Tex. 1994)................................................................................. 4

*Cantey Hanger, LLP v. Byrd*,
467 S.W.3d 477 (Tex. 2015)................................................................................. 15

*Carr v. Brasher*,
776 S.W.2d 567 (Tex. 1989)................................................................................. 12

*Ceramic Performance Worldwide, LLC v. Motor Works, LLC*,
2010 WL 234804 (N.D. Tex. Jan. 21, 2010) ............................................................... 21

*Civelli v. J.P. Morgan Sec., L.L.C.*,
57 F.4th 484 (5th Cir. 2023) ............................................................................... 23

*Clark v. Amoco Production Co.*,
794 F.2d 967 (5th Cir. 1986) ............................................................................... 2

*Dall. Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018)............................................................................. 9, 13

*Day v. Fed'n of State Med. Boards of the United States, Inc.*,
579 S.W.3d 810 (Tex. App.—San Antonio 2019, pet. denied)............................................. 21

*Desperado Motor Racing & Motorcycles, Inc. v. Robinson*,
No. CIV.A. H-09-1574, 2010 WL 2757523 & n.10 (S.D. Tex. July 13, 2010) ....................... 17

*DeWitt v. Trinity Logistics, Inc.*,
No. 4:25-CV-00560-O-BP, 2026 WL 229994 (N.D. Tex. Jan. 5, 2026)................................. 4, 5

*DirecTV, Inc. v. Nguyen*,
No. CV H-03-1757, 2003 WL 27381297 (S.D. Tex. Oct. 28, 2003) ................................. 22, 23

*Dixon v. Youngblood*,
No. CV 20-743, 2021 WL 4318123 (E.D. La. Sept. 23, 2021) ................................................ 15

*Dragon Intell. Prop LLC v. DISH Network L.L.C.,* No. 22-1621 (Fed. Cir.),
101 F.4th 1366 (2024) ............................................................................................................ 15

*Duff v. Bewley*,
No. 1:20-CV-375-RP, 2020 WL 10313694 (W.D. Tex. Dec. 15, 2020) .................................. 5

*Duzich v. Advantage Fin. Corp.*,
395 F.3d 527 (5th Cir. 2004) .................................................................................................. 23

*Encompass Office Solutions, Inc. v. Ingenix, Inc.*,
775 F. Supp. 2d 938 (E.D. Tex. 2011) .................................................................................... 18

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) .................................................................................................................... 3

*EscapeX IP, LLC v. Google LLC*,
No. 23-CV-10839 (VSB) (VF), 2025 WL 893739 (S.D.N.Y. Mar. 24, 2025) ........... 1, 7, 10, 11

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) .................................................................................................... 7

*Fringe Benefit Grp. Inc. v. FCE Benefit Administrators, Inc.*,
No. A-18-CV-369-LY, 2018 WL 6728486 (W.D. Tex. Dec. 21, 2018) .................................. 14

*Greater Hous. Transp. Co. v. Uber Techs., Inc.*,
CIV.A. 4:14–0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) ......................................... 19

*Holloway v. Butler*,
662 S.W.2d 688 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) ......................... 4, 5

*Hurlbut v. Gulf Atl. Life Ins. Co.,*
749 S.W.2d 762 (Tex. 1987) .................................................................................................... 17

*Immanuel v. Cable News Network, Inc.*,
618 F. Supp. 3d 557 (S.D. Tex. 2022) .................................................................................... 6, 7

*In re Lipsky*,
460 S.W.3d 579 (Tex. 2015) ................................................................................................... 3, 17

*Jabary v. City of Allen*,
547 F. App'x 600 (5th Cir. 2013) .......................................................................................... 24, 25

*James v. Brown*,
637 S.W.2d 914 (Tex. 1982) .................................................................................................... 14

iv

*Jones v. Alcoa, Inc.*,
  339 F.3d 359 (5th Cir. 2003) ................................................................................ 5

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
  No. 24-CV-03089-PHK, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025) ........................... passim

*Landry's, Inc. v. Animal Legal Def. Fund*,
  631 S.W.3d 40 (Tex. 2021) .......................................................................... 15, 16

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ................................................................................ 25

*McIlvain v. Jacobs*,
  794 S.W.2d 14 (Tex. 1990) .................................................................................... 9

*M–I LLC v. Stelly*,
  733 F. Supp. 2d 759 (S.D. Tex. 2010) .................................................................. 19

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ................................................................................................ 12

*N.Y. Times v. Sullivan*,
  376 U.S. 254 (1964) .............................................................................................. 4

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
  512 F.3d 137 (2007) ............................................................................. 4, 5, 16, 18

*Neely v. Wilson*,
  418 S.W.3d 52 (Tex. 2013) ............................................................................ 4, 7, 9

*Neitzke v. Williams*,
  490 U.S. 319 (1989) .............................................................................................. 2

*Norris v. Hearst Tr.*,
  500 F.3d 454 (5th Cir. 2007) ................................................................................ 7

*Oberc v. Fairlane Capital Inc.*,
  No. 3:13-CV-1010-N-BH, 2016 WL 3039658 (N.D. Tex. May 2, 2016) ....................... 12

*Owens v. Trans Union, LLC*,
  No. 4:20-CV-665-SDJ-KPJ, 2022 WL 17728873 (E.D. Tex. Sept. 9, 2022) .................... 5

*Patel v. Figliuzzi*,
  No. 4:25-CV-02548, 2026 WL 1097758 (S.D. Tex. Apr. 21, 2026) ............................. 13

*Patterson v. T.V. Channel 25 Broad. Station*,
  489 S.W.3d 589 (Tex. App.—Texarkana 2016, no pet.) ............................................ 4

*Priority Design & Serv., Inc. v. Plaza*,
No. SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019) ............. 19, 20, 21

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
29 S.W.3d 74 (Tex. 2000) ...................................................................................... 19

*Reagan v. Guardian Life Insurance Co.*,
166 S.W.2d 909 (Tex. 1942) ................................................................................... 14

*Schoellkopf v. Pledger*,
778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) ........................................ 22

*Songbyrd, Inc. v. Bearsville Records, Inc.*,
104 F.3d 773 (5th Cir. 1997) ................................................................................... 4

*Sorcic v. Int'l Ass'n for Fin. Plan.*,
814 F. Supp. 27 (S.D. Tex. 1992) ............................................................................ 5

*Springboards to Educ., Inc. v. Kipp Found.*,
325 F. Supp. 3d 704 (N.D. Tex. 2018) .................................................................... 24

*Suncoast Post-Tension, Ltd. v. Scoppa*, No.,
4:13-CV-3125, 2014 WL 12596471 (S.D. Tex. May 13, 2014) ......................... 19, 22

*Taylor Pub. v. Josten's*,
216 F.3d 465 (5th Cir. 2000) ............................................................................ 22, 23

*Teel v. Deloitte & Touche LLP*,
No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015) ....... 4, 5, 17, 18

*Tex. Tribune, Inc. v. MRG Med. LLC*,
No. 03-23-00293-CV, 2024 WL 2305265 (Tex. App.—Austin May 22, 2024, pet. denied) .. 16

*ThermoTek, Inc. v. WMI Enterprises, LLC*,
No. 3:10-CV-2618-D, 2011 WL 1485421 (N.D. Tex. Apr. 19, 2011) ..................... 21

*Tilton v. Marshall*,
925 S.W.2d 672 (Tex. 1996) .................................................................................... 24

*Tu Nguyen v. Duy Tu Hoang*,
318 F. Supp. 3d 983 (S.D. Tex. 2018) ................................................................... 5, 6

*Turner v. KTRK Television, Inc.*,
38 S.W.3d 103 (Tex. 2000) ....................................................................................... 9

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*,
819 F. App'x 204 (5th Cir. 2020) ........................................................................... 20

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) ................................................................................ 2, 3, 7, 9

*Wal-Mart Stores, Inc. v. Sturges*,
   52 S.W.3d 711 (Tex. 2001) ........................................................................................ 20, 21

*Williams v. Cordillera Commc'ns, Inc.*,
   26 F. Supp. 3d 624 (S.D. Tex. 2014) ............................................................................... 9

*Williams v. Ramey*,
   No. 14-21-00158-CV, 2022 WL 2517118 (Tex. App.—Houston [14th Dist.] July 7, 2022, pet.
   dism'd) ........................................................................................................................... 18

*Williamson v. New Times, Inc.*,
   980 S.W.2d 706 (Tex. App.—Fort Worth 1998, no pet.) ............................................... 4

*Zhejiang Med. Co. v. Kaneka Corp.*,
   No. CV H-11-1052, 2012 WL 12893418 (S.D. Tex. Aug. 13, 2012) ..................................... 22

**Statutes**

35 U.S.C. § 285 ................................................................................................................ 15

TEX. CIV. PRAC. & REM. CODE § 16.002(a) ........................................................................... 4, 5, 6

TEX. CIV. PRAC. & REM. CODE § 73.005(a) ................................................................................ 7

**Rules**

FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) ................................................................. 1, 2, 4, 5

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendants Unified Patents, LLC ("**Unified**"), and Jonathan Stroud ("**Stroud**"), collectively ("**Defendants**"), file this Motion to Dismiss the Complaint filed by William P. Ramey, III ("**Ramey**") and Ramey LLP (collectively, "**Plaintiffs**"):

## I.    INTRODUCTION, NATURE AND STAGE OF THE PROCEEDING

Plaintiffs sued Defendants on February 23, 2026, for accurately stating what multiple federal courts have found—that Ramey and his firm engaged in bad faith litigation, filed frivolous suits, practiced law without authorization, and misrepresented facts to federal courts. Plaintiffs do not and cannot dispute those judicial findings.

The public record is extraordinary. In March 2025 alone,[1] three orders from two separate federal courts sanctioned Ramey and his colleagues for, among other things, filing a third identical lawsuit without investigating whether it was legally barred, engaging in the "unauthorized practice of law" across dozens of California cases without obtaining required pro hac vice admission, and submitting "demonstrably false" sworn declarations to a federal court. One judge called it "bad faith, harassment, and an abuse of the federal court system." *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-CV-03089-PHK, 2025 WL 917110, at *21 (N.D. Cal. Mar. 26, 2025). Another catalogued "a long pattern of similar behavior" spanning "frivolous suits" filed nationwide. *EscapeX IP, LLC v. Google LLC*, No. 23-CV-10839 (VSB) (VF), 2025 WL 893739, at *10-11 (S.D.N.Y. Mar. 24, 2025). A third order described the conduct as "unprecedented in the decades of the undersigned's experience." *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-CV-03089-PHK, 2025 WL 980796, at *19 (N.D. Cal. Mar. 31, 2025).

Stroud commented on those and previous orders via a 2022 blog and through posts on

---

[1] The public record notes many other sanctions orders or fee awards—this brief focuses only on those that are the subject of Plaintiffs' claims against Defendants.

LinkedIn, and Unified discussed Ramey's conduct in an amicus brief filed in the Federal Circuit in support of en banc rehearing. None contains a false statement of fact or conveys a false gist.

## II. STATEMENT OF THE ISSUES

Every claim in the Complaint fails as a matter of law. Claims based on the 2022 blog and amicus brief are time-barred. The LinkedIn posts are true (or at minimum substantially true), and the remaining characterizations are protected opinion. The amicus brief is shielded by the judicial-proceedings privilege. And the derivative claims for business disparagement, tortious interference, unfair competition, and civil conspiracy are all conditioned on the failing defamation claim. This case should be dismissed with prejudice as to Unified Patents and Jonathan Stroud.

## III. LEGAL STANDARD

"FRCP 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's 'failure to state a claim upon which relief can be granted.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting FED. R. CIV. P. 12(b)(6)). "Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke*, 490 U.S. at 326–27.

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

## IV. SUMMARY OF THE ARGUMENT

Dismissal of all claims is proper. All of the defamation claims fail because: the November 15, 2022 blog and an August 20, 2024 amicus brief are time-barred and cannot be revived by the

discovery rule; Stroud's LinkedIn posts are literally true, are substantially true, contain protected opinion, and are far less damaging than the sanctions orders themselves that are referenced; and Unified's amicus brief is absolutely privileged under the judicial-proceedings doctrine.

Plaintiffs' other claims are derivative and conditioned on the survival of their defamation claim. They must be dismissed because the defamation claim fails. And even assuming Plaintiffs could plead a defamation claim, dismissal is nevertheless proper. The business-disparagement claim fails because Plaintiffs have not pled a false statement or special damages. The tortious interference claims fail because Plaintiffs do not plead a specific relationship or contracts that were interfered with or an independent tort. The unfair competition claim fails because Plaintiffs do not allege their business was actually interfered with. The civil conspiracy claim fails because Plaintiffs merely allege parallel conduct that does not equate a meeting of the minds to engage in some preconceived objective.

## V.  LAW & ARGUMENT

### A.  Defamation, generally.

"Texas law establishes the following elements to state an actionable claim of defamation: (1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages."[2] *Walker*, 938 F.3d at 734 (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). "A statement is defamatory 'if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation.'" *Id.* (quoting *Lipsky*, 460 S.W.3d at 593).

---

[2] Texas law controls. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

In Texas, "the defamation action has been narrowly tailored to limit free speech as little as possible" because "[e]very defamation action that the law permits necessarily inhibits free speech." *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994); *see also Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013) ("Of significant import are the constitutional rights to free speech and a free press. As the United States Supreme Court has articulated, 'whatever is added to the field of libel is taken from the field of free debate.'" (citation omitted) (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 272 (1964)).

**B.  Defamation claims based on the Stroud Blog and amicus brief are time-barred.**

The Complaint devotes several pages to a November 15, 2022 blog authored by Jonathan Stroud on PatentProgress.org ("Stroud Blog"). It is unclear whether Plaintiffs based their defamation claim on this blog since Count I references only Stroud's LinkedIn posts. Dkt. 1 ¶¶ 124-128. To the extent so, it is time-barred.[3] So, too, is the amicus brief filed on August 20, 2024, time barred (in addition to being privileged, as discussed in section D *infra*).

"Under Texas law, the statute of limitations for a libel action is one year." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, No. 3:06-CV-0600-N, 2006 WL 8436934, at *2 (N.D. Tex. Oct. 16, 2006), *aff'd*, 512 F.3d 137 (5th Cir. 2007) (citing TEX. CIV. PRAC. & REM. CODE § 16.002(a)). The limitations period "begins to run upon publication of the defamatory material." *Id.* (citing *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 710 (Tex. App.—Fort Worth 1998, no pet.)).[4]

The Stroud Blog was published on November 15, 2022. *See* Dkt. 1, Ex. D. Therefore,

---

[3] Limitations is an affirmative defense that "may properly be asserted in a Rule 12(b)(6) motion to dismiss." *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *3 (N.D. Tex. Dec. 29, 2015) (quoting *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 776 n.3 (5th Cir. 1997)).

[4] *See DeWitt v. Trinity Logistics, Inc.*, No. 4:25-CV-00560-O-BP, 2026 WL 229994, at *10 (N.D. Tex. Jan. 5, 2026), *report and recommendation adopted*, No. 4:25-CV-00560-O-BP, 2026 WL 228775 (N.D. Tex. Jan. 28, 2026); *Patterson v. T.V. Channel 25 Broad. Station*, 489 S.W.3d 589, 592 (Tex. App.—Texarkana 2016, no pet.); *Holloway v. Butler*, 662 S.W.2d 688, 693 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

4

limitations period expired on November 15, 2023. *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a). Plaintiffs' subsequent actions (a retraction demand on January 23, 2026, and filing the Complaint on February 23, 2026), were years late. Accordingly, any defamation claims based on the Stroud Blog are time-barred as a matter of law and must be dismissed. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."); *DeWitt*, 2026 WL 229994, at *10 (dismissing defamation claims as time barred); *Duff v. Bewley*, No. 1:20-CV-375-RP, 2020 WL 10313694, at *2 (W.D. Tex. Dec. 15, 2020) (same); *Teel*, 2015 WL 9478187, at *10 (same); *Nationwide*, 2006 WL 8436934, at *2–4 (same); *Owens v. Trans Union, LLC*, No. 4:20-CV-665-SDJ-KPJ, 2022 WL 17728873, at *6 (E.D. Tex. Sept. 9, 2022) (same), *report and recommendation adopted sub nom.*, 2024 WL 554115 (E.D. Tex. Feb. 12, 2024).

The Complaint alleges that Plaintiffs were not aware of the Stroud Blog at the time of publication because "[n[either Ramey nor anyone else associated with Ramey LLP is a member of Patent Progress." Dkt. 1 ¶ 23. Plaintiffs also attach three declarations to this effect. *See* Dkt. 1, Exs. N, O, P (each stating "[w]hile I did not learn of the Stroud Blog until very recently…"). To the extent Plaintiffs suggest the discovery rule applies, it does not. Texas courts do not apply the discovery rule "where an allegedly defamatory statement is disseminated via the mass media." *Holloway*, 662 S.W.2d at 693; *see also Sorcic v. Int'l Ass'n for Fin. Plan.*, 814 F. Supp. 27, 28 (S.D. Tex. 1992) (same). "Generally, any defamation claim arising out of a website would accrue from the day the matter was published or circulated." *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1011 (S.D. Tex. 2018). The Stroud Blog is publicly available on the Internet,[5] as

---

[5] https://patentprogress.org/2022/11/with-frivolous-npe-patent-suits-clogging-courts-counsels-diligence-and-ethics-suffer/

demonstrated by the fact that Ramey was able to view it despite not being "a member of Patent Progress." *See* Dkt. 1, ¶ 23. *See Tu Nguyen*, 318 F. Supp. 3d at 1011 (dismissing defamation claim on limitations grounds for Internet posts because the plaintiff "was able to discover … [the] posts when he became diligent about searching for the information," proving they were not "inherently undiscoverable"). As such, it is not "inherently undiscoverable." *Id.* The Stroud Blog has been public, open, free, and indexed for years, without login or gate-keeping requirements. That Ramey himself was unaware of it for so long belies any claim of harm.

Likewise, the amicus brief was filed on August 20, 2024. *See* Dkt. 1, Ex. E. Its limitations period expired on August 20, 2025. *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a). The Court should dismiss any defamation claims based on the Stroud Blog and amicus brief as time-barred.

### C. Stroud's LinkedIn posts are substantially true and protected opinion.

Plaintiffs also allege that during 2025, Stroud, acting on behalf of Unified Patents, published "numerous posts" to LinkedIn concerning Plaintiffs. Dkt. 1 ¶ 30. As alleged, Stroud's posts referenced sanctions awards against Ramey,[6] commented on his bar standing and pro hac vice practices, characterized the situation as an "[e]ndlessly fascinating saga," and tagged the United States Patent and Trademark Office in a thread calling for stricter bar discipline. *Id.* ¶¶ 30(a)–(c). To be sure, Plaintiffs do not allege that any individual statement in these posts is literally false; rather, they contend the posts collectively convey a "false gist" that Ramey "continuously violates the rules, is unethical, and apparently does not report to his state bar," creating a defamatory impression that is "more damaging to Plaintiffs' reputations than a truthful account

---

[6] Unified and Stroud adopt and incorporate by reference the arguments of Defendants Bloomberg, L.P., and RPX Corp. in their concurrently filed Motions to Dismiss that Ramey is a limited purpose public figure. As such, Plaintiffs have failed to plead with "clear and specific evidence" that Defendants acted with actual malice, that is, that Defendants knew the statements were false or acted with reckless disregard to their truth. *See Immanuel*, 618 F. Supp. 3d at 566. To the contrary, Stroud repeatedly references the cases on which he reasonably relies in making his statements.

6

would have been." *Id.* ¶¶ 31, 136.

    1.  <u>The LinkedIn posts are true.</u>

First, none of the challenged statements are verifiably false. *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) ("[S]tatements that are not verifiable as false cannot form the basis of a defamation claim."); *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 563 (S.D. Tex. 2022) ("A statement must be false to be defamatory…"); Tex. Civ. Prac. & Rem. Code § 73.005(a) ("The truth of the statement in the publication on which an action for libel is based is a defense to the action"). Below is a chart of the complained-of language in Stroud's LinkedIn posts, alongside direct quotes from the sanctions orders confirming their literal truth:[7]

| Complained-of language | Truth |
|---|---|
| "Another day, another award. Here, false allegations in the complaint, among with another laundry list of violations. The award this time was $124,000; it is added to more than a dozen, at least three this calendar year. Still in good standing with the bar, still in possession of a USPTO registration number, still no action taken to deter the conduct." Dkt. 1 ¶ 30(a), Ex. F. | Stroud's post referenced the sanction order in *EscapeX IP*, 2025 WL 893739, which found that Ramey's complaint contained "false allegations" *id.* at *7–8, and that Ramey's conduct was "part of a long pattern of similar behavior," observing that he had "been sanctioned at least seven times in four years, totaling at least $810,000" in fee awards, and that he had a track record of commencing "frivolous suits" against "tech giants" to "force a modest settlement ... on the assumption that the tech giant will prefer to capitulate than fight back." *Id.* at *10–11. |
| "Coming on the heels of a $200k, $100k+, and $90k sanction/fee award in the last few months, this attorney---who is still listed as in good standing with no disciplinary action in | Stroud's post referenced the order in *Koji IP,* 2025 WL 917110, which sanctioned Ramey firm attorneys for "bad faith, harassment, and an abuse of the federal court system" after they |

---

[7] The Court may consider the sanctions orders in its dismissal analysis because they are matters of public record. *Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2016 WL 6666828, at *10 (E.D. Tex. Mar. 11, 2016), *report and recommendation adopted*, No. 1:15-CV-379, 2016 WL 1156852 (E.D. Tex. Mar. 24, 2016), *aff'd*, 938 F.3d 724 (5th Cir. 2019) (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)); s*ee also Norris v. Hearst Tr.*, 500 F.3d 454, 461 & n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record"). Alternatively, the Court may consider the sanctions orders because they are referenced in Plaintiffs' complaint, partially attached to the complaint, and central to their claims. *Walker*, 938 F.3d at 735 ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents."); *Immanuel*, 618 F. Supp. 3d at 563 ("On a motion to dismiss, courts may consider the allegedly defamatory publications.").

Texas and at the USPTO---can add another $45k sanction to the pile. He appeared in 56 matters listing as pro hac in California, and only bothered to actually seek it in 10. Per this order, the attorneys must self report to their own bars (which they are already under an obligation to do). I think we can assume that hasn't been happening. This entire saga demonstrates how toothless bar discipline and ethical enforcement have gotten in patet [sic] law. This has been going on for a decade." Dkt. 1 ¶ 30(b), Ex. F.

"To be clear, this order is limited to the pro hac issue. There are other sanctions pending in this case related to the repeated baseless filings (three, to be exact) against the same party for the same patent." Dkt. 1 ¶ 30(b), Ex. F.

filed a third identical suit without any "pre-filing investigation" into the consequences of two prior voluntary dismissals. *Id.*, at *8, *12. The order states that Ramey firm attorneys had engaged in the "unauthorized practice of law" across forty-six Northern District of California cases and many of his thirty-seven Central District of California cases without obtaining required pro hac vice admission—having only sought admission in roughly ten of fifty-six Northern District of California Cases—and personally sanctioned Mr. Ramey $45,264. *Id.* at *3–4, *6, *17, *21. The court ordered each sanctioned attorney to "self-report" the sanctions order to their respective state bars. *Id.* at *21–22. The Court noted other sanctions were pending. *Id.* at *1 ("The Court will issue a separate Order on that motion for fees and sanctions which are legally unrelated to the issues at hand.").

"Endlessly fascinating saga right here. Nineteen awards!" *Id*. Stroud tagged the USPTO in response to another LinkedIn user's comment which stated, "[t]he state bar disciplinary authorities need to take a much harder stance against these sort of behaviors." Dkt. 1 ¶ 30(c), Ex. F.

Stroud's post references a Bloomberg article titled Lawyer Big Tech Loves to Hate Wears Backlash as 'Badge of Honor', which indicated that "Judges have granted, fully or partially, at least 19 requests for sanctions and attorney's fees against Ramey, his firm and/or clients, totaling about $2 million, according to a Bloomberg Law analysis."

Additionally, the *Koji* court noted there was "a pattern of sanctions ordered against Mr. Ramey, Ms. Kalra, and the Ramey firm (and its clients) across a range of issues and cases nationwide." *Koji IP, LLC*, 2025 WL 917110, at *6.

As quoted in a Bloomberg article, "[Ramey is] financially incentivized to not look into his complaints, to file cases against the wrong party, to be sloppy, because he's making more money doing that than being sanctioned." Dkt. 1 ¶ 72.

The Court in *Koji* held: "It is quite likely that the volume-focused and quick-settlement nature of the Ramey law firm's practice motivated these attorneys' decisions to largely avoid filing pro hac vice applications …. Mr. Ramey admitted as much at the OSC hearing. … By avoiding these *pro hac* fees over the years, the Ramey law firm has saved a substantial amount of money, but at a cost to

8

| | the Court, the public, and the profession." *Koji IP, LLC*, 2025 WL 917110, at *7. |
| --- | --- |

Because Plaintiffs have not and cannot allege the challenged statements are false, the statements cannot supply a basis for a defamation claim against Stroud or Unified.

### 2. The LinkedIn posts are substantially true.

Instead of alleging the falsity of each statement, Plaintiffs allege the statements "falsely portray the gist that there is a 'saga' surrounding Ramey because he continuously violates the rules, is unethical, and apparently does not report to his state bar." Dkt. 1 ¶ 31. Plaintiffs are wrong under the doctrine of substantial truth.

"In determining whether a statement is false, Texas has adopted the substantial-truth doctrine, under which a plaintiff is precluded from recovery when a 'publication ... correctly conveys a story's 'gist' or 'sting' although erring in the details.'" *Walker*, 938 F.3d at 743 (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). "This evaluation involves looking at the 'gist' or meaning, of a [publication], which is determined 'by examining how a person of ordinary intelligence would view it.'" *Id.* (quoting *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013)). The analysis is whether the publication, "'taken as a whole is more damaging to the plaintiffs' reputation than a truthful [publication] would have been,' in the mind of the average person." *Id.*; *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 636, 641 (Tex. 2018). "Truth or substantial truth is a question of law where the underlying facts are undisputed." *Williams v. Cordillera Commc'ns, Inc.*, 26 F. Supp. 3d 624, 630 (S.D. Tex. 2014); *see also McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990) (comparing "the contents of the broadcast" and a report to determine, as a matter of law, that the broadcast was substantially true).

Stroud's LinkedIn posts and their implications are substantially true because the "gist" they convey is no more damaging to Plaintiffs' reputations than a truthful account would have been.

9

The judicial record is, if anything, more damaging than Stroud's LinkedIn posts.

Indeed, the courts themselves have used language that confirms an ongoing "saga." As noted above, in *EscapeX*, the court found that Ramey's conduct was "part of a long pattern of similar behavior," observing that he had "been sanctioned at least seven times in four years, totaling at least $810,000" in fee awards, and that he had a track record of commencing "frivolous suits" against "tech giants" to "force a modest settlement … on the assumption that the tech giant will prefer to capitulate than fight back." *EscapeX*, 2025 WL 893739, at *10–11. In *Koji IP*, the court described the record as "truly extraordinary, evincing a pattern of conduct spanning many cases, over many years, specific to this one law firm and its namesake attorney." *Koji IP*, 2025 WL 917110, at *21. In a subsequent order in the same case, the court reiterated that the facts "demonstrate a pattern and practice of egregious behavior by the lawyers involved" and that the "manner of litigation here, including the misrepresentations by counsel, is unprecedented in the decades of the undersigned's experience in patent law and litigation both on and off the bench." *Koji IP*, 2026 WL 793025, at *19.

As to the alleged false gist that Ramey "continuously violates the rules" and "is unethical," the *Koji IP* court found that Ramey and his colleagues "repeatedly and knowingly" engaged in the "unauthorized practice of law" across at least forty-six Northern District of California cases and many of their thirty-seven Central District of California cases without obtaining required pro hac vice admission, and "repeatedly and knowingly" violated "applicable rules of professional conduct" and the court's Local Rules. *Koji IP*, 2025 WL 917110, at *17. The court found that this was not "excusable neglect or oversight" but rather a "conscious decision to avoid the application fees," and that "the conduct here is consistent with a pattern and practice of violating and flouting ethical rules." *Id.* The *EscapeX* court similarly catalogued a history of sanctions across multiple

10

jurisdictions for filing frivolous suits, failing to conduct pre-suit investigations, and pursuing claims after being informed they lacked merit. *EscapeX*, 2025 WL 893739, at \*10–11. The *Koji* court's March 31, 2025 order further found that Ramey's counsel "misrepresented facts to this Court" through sworn declarations. 2025 WL 980796, at \*18.

Finally, as to the alleged false gist that Ramey "apparently does not report to his state bar," Stroud's inference was well founded. Both *Koji IP* orders required each sanctioned attorney to "self-report" the sanctions and "provide a copy of this Order" to, among others, "the State Bar of California, the State Bar of Texas," and "the United States Patent and Trademark Office." *Koji IP*, 2025 WL 917110, at \*21; *Koji IP*, 2025 WL 980796, at \*20. That the court found it necessary to *order* self-reporting—and to require "a certification under oath" of compliance—supports a reasonable inference that such reporting had not been occurring voluntarily.

A person of ordinary intelligence reading Stroud's posts alongside the publicly available sanctions orders could not find Stroud's commentary "more damaging" than the truth. The truth, as found by multiple federal courts, is that Ramey engaged in a years-long pattern of bad-faith litigation, rule violations, and misrepresentations to the court—precisely the "saga" Stroud described.

### 3. The LinkedIn posts contain protected opinions.

Beyond the factual recitations of sanctions awards and court findings, Stroud's LinkedIn posts contain several statements that constitute pure opinion or rhetorical commentary rather than assertions of fact. These include his characterization of Ramey's sanctions history as an "[e]ndlessly fascinating saga," Dkt. 1 ¶ 30(c); his observation that "[t]his entire saga demonstrates how toothless bar discipline and ethical enforcement have gotten in patet [sic] law," *id.* ¶ 30(b); his speculation that Ramey has not been self-reporting sanctions to his state bar—"I think we can assume that hasn't been happening," *id.*; his rhetorical framing "[a]nother day, another award," *id.*

11

¶ 30(a); and his tagging of the USPTO in a thread where a commenter urged that "[t]he state bar disciplinary authorities need to take a much harder stance against these sort of behaviors," *id.* ¶ 30(c)(i).

"To be actionable defamation, a statement must be a verifiable fact rather than an opinion." *Oberc v. Fairlane Capital Inc.*, No. 3:13-CV-1010-N-BH, 2016 WL 3039658, at *6 (N.D. Tex. May 2, 2016), *report and recommendation adopted*, No. 3:13-CV-1010-N, 2016 WL 3031949 (N.D. Tex. May 27, 2016). "Whether allegedly defamatory statements are 'statements of fact or expressions of opinion depends ... on their verifiability and the context in which they are made.'" *Id.* (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2003)); accord *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). The analysis depends on a "reasonable person's perception of the entirety of the publication and not merely on individual statements." *Id.* (quoting *Bentley*, 94 S.W.3d at 579). "[W]hether the publication is a protected expression of opinion or an actionable statement of fact is a question of law for the court." *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989).

Applying this standard, the above statements are plainly nonverifiable expressions of opinion. Stroud's characterization of Ramey's sanctions history as an "[e]ndlessly fascinating saga," Dkt. 1 ¶ 30(c), is a subjective rhetorical label—no reasonable reader would understand it as asserting a provably true or false fact, and no objective metric exists by which to verify whether a series of legal proceedings is "endlessly fascinating." Stroud's observation that "[t]his entire saga demonstrates how toothless bar discipline and ethical enforcement have gotten in patet [sic] law," *id.* ¶ 30(b), is an editorial judgment about the adequacy of professional regulatory systems—a classic expression of opinion on a matter of public concern that cannot be reduced to a verifiable factual proposition. Whether bar discipline is "toothless" is inherently a matter of perspective and

12

policy debate, not a falsifiable claim. As a matter of law, these rhetorical statements are not defamatory. *Patel v. Figliuzzi*, No. 4:25-CV-02548, 2026 WL 1097758, at *3 (S.D. Tex. Apr. 21, 2026) ("Statements that would be perceived by the audience as 'rhetorical hyperbole' do not constitute defamation.").

Speculation that Ramey has not been self-reporting sanctions to his state bar is expressly hedged as an assumption, not fact. The prefatory phrase "I think we can assume" signals to any reasonable reader that Stroud is drawing an inference. Stroud's rhetorical framing "[a]nother day, another award," Dkt. 1 ¶ 30(a), is sardonic commentary on the frequency of sanctions against Ramey—a tone and characterization (though it is substantially true). Finally, Stroud's tagging of the USPTO in a thread where a commenter urged that "[t]he state bar disciplinary authorities need to take a much harder stance against these sort of behaviors," *id.* ¶ 30(c)(i), is an implicit call for regulatory action, not a factual assertion. None of Stroud's opinions imply undisclosed facts. To the contrary, Stroud links to and references court orders and other sources on which he bases his opinions. This is quintessential protected opinion that cannot, as a matter of law, form the basis of a defamation action. *See Tatum*, 554 S.W.3d at 639 (Tex. 2018) (finding statement is protected opinion where defendant quoted from underlying source and then speculated as to the facts contained therein, which was "reasonably based on these disclosed facts").

Finally, Stroud's quotation in the Bloomberg article is protected opinion. It is a simple, commonsense opinion to state that Ramey must be "financially incentivized to not look into his complaints, to file cases against the wrong party, to be sloppy, because he's making more money doing that than being sanctioned." Dkt. 1 ¶ 72. Ramey himself admitted that he is motivated to not pay pro hac vice fees (and instead engage in the unauthorized practice of law), because of the volume of cases he files and the quick settlements they earn. *See Koji IP, LLC*, 2025 WL 917110,

13

at *7. The average reader would understand that Stroud is making a reasonable inference that Ramey would likely not continue practicing as he does if the monetary sanctions and associated reputational harm outweighed the financial gain of his practice. And Stroud's classification of Ramey's practice as "sloppy" is his opinion, based on the disclosed facts, including that Ramey fails to "look into his complaints." *See Id.* at *12 (sanctioning Ramey and his firm for failing to perform "any pre-filing investigation (much less an adequate inquiry)" before filing a third complaint against the same party). A reasonable person viewing the entirety of these statements would perceive them as commentary and opinion about publicly available court orders, not as independent assertions of defamatory fact.

### D. Statements in an amicus brief are absolutely privileged under the judicial proceedings privilege.

Ramey alleges Unified and Stroud "continue[d] their false and defamatory publications through an amicus brief filed on August 20, 2024, wherein they repeat their false and misleading statement regarding Ramey and Ramey LLP." Dkt. 1 ¶ 29.

Statements in an amicus brief are absolutely privileged. "Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *Reagan v. Guardian Life Insurance Co.*, 166 S.W.2d 909 (Tex. 1942). This privilege "extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982); *Fringe Benefit Grp. Inc. v. FCE Benefit Administrators, Inc.*, No. A-18-CV-369-LY, 2018 WL 6728486, at *3 (W.D. Tex. Dec. 21, 2018), *report and recommendation adopted*, No. 1:18-CV-369-LY, 2019 WL 2563833 (W.D. Tex. Mar. 19, 2019).

14

Unified's amicus filing in *Dragon Intell. Prop LLC v. DISH Network L.L.C.*, No. 22-1621 (Fed. Cir.), is absolutely privileged. In that proceeding, Unified urged en banc rehearing of a panel decision holding that liability for attorneys' fees under 35 U.S.C. § 285 does not extend to counsel. Dkt. 1 ¶ 29, Ex. E. The brief argued that this categorical rule "too broadly and categorically insulates lawyers" from fee liability, creating a system in which non-practicing plaintiff entities—often with "no assets, working capital, or income"—can be used as judgment-proof shells to avoid accountability. *Id.*, Ex. E at 3, 8–9. The brief cited Ramey's sanctions history as a case study: it recounted that Ramey had "identified six cases where he was counsel, and a court issued Section 285 sanctions" along with "nine additional cases with fee motions pending"—"quite a number for a firm employing only 6-8 lawyers"—and described hearing testimony revealing that managing members of Ramey's LLCs were attorneys at his own firm, arguing that "counsel is responsible for the substantive litigation positions when the litigating 'party' is little more than a legal fiction." *Id.* at 7–9. These statements were drawn from court records, Ramey's own sworn declarations, and were offered in support of a legal argument for changing the applicable fee-shifting standard.

Unified's statements in the amicus brief are absolutely privileged. The privilege is broad and extends to any papers filed in a case, beyond attorneys, and even to non-parties. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 485 n.12 (Tex. 2015); *e.g.*, *Dixon v. Youngblood*, No. CV 20-743, 2021 WL 4318123, at *5 (E.D. La. Sept. 23, 2021) (applying Texas law and dismissing defamation claims based on non-party's statements in affidavit in support of summary-judgment motions in separate proceeding). Unified's amicus brief is unquestionably a paper filed in the *DISH Network* case, and applying the privilege here furthers the policy underlying the rule, i.e., to "facilitate open and vigorous litigation of matters inside the courtroom." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 49 (Tex. 2021). Amicus curiae briefs serve precisely that

15

function: they provide courts with perspectives, data, and real-world context that the parties themselves may not offer. If amici faced defamation exposure for citing a litigant's publicly available sanctions history in support of a relevant legal argument before the court, the chilling effect would extend well beyond the parties to a case and deter the very category of informed, public-interest participation the amicus device is designed to encourage. That is antithetical to the privilege's purpose of promoting open advocacy in judicial proceedings. *See id.* (indicating the privilege's "purpose is to facilitate open and vigorous litigation of matters inside the courtroom").

### E. Plaintiffs' remaining claims must be dismissed because they are conditioned on defamation.[8]

Plaintiffs' remaining claims are conditioned on a viable defamation claim. The business-disparagement claim, for example, alleges Defendants published a "false" statement about Plaintiffs' business. Dkt. 1 ¶¶ 148–49. The tortious-interference claim expressly identifies the "independently tortious" conduct as "defamation, business disparagement, and unfair competition," *id.* ¶ 157, each of which in turn depends on the alleged falsity of the same publications. The unfair-competition claim is premised on Defendants having "[l]everaged their dominance and collective resources to saturate the patent-litigation community with a false narrative" about Plaintiffs, *id.* ¶ 162, and alleges no independent wrongful act apart from the defamatory publications. Finally, the civil-conspiracy claim requires an underlying tort and identifies the overt acts in furtherance of the conspiracy as "the publications and interference described above," *id.* ¶ 169—all of which trace back to the defamation claim's falsity allegations.

---

[8] Because they are barred by limitations, the Stroud Blog and amicus brief cannot supply a basis for any of these claims. *E.g.*, *Tex. Tribune, Inc. v. MRG Med. LLC*, No. 03-23-00293-CV, 2024 WL 2305265, at *6 (Tex. App.—Austin May 22, 2024, pet. denied) (collecting cases and dismissing tort claims built on defamatory statements that were barred by one-year limitations period). The two-year statute of limitations that typically controls for business disparagement, tortious interference, and unfair competition does not apply when these claims are based on the allegedly defamatory statements; instead, the one-year defamation limitation applies to all of these claims. *Nationwide*, 2006 WL 8436934, at *3.

And even if the claims did not rely on proof of defamation, the claims would fail regardless.

1. <u>Business disparagement should be dismissed because there is no false statement and Plaintiffs fail to plead special damages.</u>

"The general elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages.... The action for injurious falsehood or business disparagement is to protect the economic interests of the injured party against pecuniary loss." *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, No. CIV.A. H-09-1574, 2010 WL 2757523, at *3 & n.10 (S.D. Tex. July 13, 2010) (quoting *Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex. 1987)); *Teel*, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015) ("A claim for business disparagement requires three stringent elements: falsity of statement, fault of the defendant, and proof of special damages.")).

First, statements that constitute truth or opinion are not actionable under a business-disparagement theory. *Teel*, 2015 WL 9478187, at *7; *Lipsky*, 460 S.W.3d at 591 ("Business disparagement and defamation are similar in that both involve harm from the publication of false information."). Because none of the statements published by Stroud or Unified are false, the same cannot sustain a business-disparagement claim.

Second, Plaintiffs have not pled sufficient facts necessary to establish special damages resulting from the alleged statements. *Teel*, 2015 WL 9478187, at *4 (dismissing business disparagement claim for this reason). Special damages are "an essential part of the plaintiff's cause of action for business disparagement." *Id*. at *4. Plaintiff must "establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales." *Id.* (quoting *Hurlbut*, 749 S.W.2d at 767). "Furthermore, the communication must play a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established." *Hurlbut*, 749 S.W.2d at 767.

17

The Complaint relies on conclusory statements, alleging only that Plaintiffs "suffered special damages, including but not limited to specific lost clients, funding refusals, and litigation opportunities that can be proven at trial." Dkt. 1 ¶ 151. This is precisely the kind of conclusory, categorical pleading that fails to satisfy the special damages requirement. The Complaint does not name a single lost client, identify a single funder that declined financing, specify a single litigation opportunity that was lost, or quantify a single dollar of pecuniary loss – nor does the Complaint provide a causal link to explain how Plaintiffs' supposed damages are the result of Stroud's LinkedIn posts as opposed to the numerous sanctions awards against Plaintiffs. *Teel*, 2015 WL 9478187, at \*6 (dismissing business disparagement claims because plaintiff failed to plead factual content to show special damages); *Barrash v. Am. Assoc. of Neurological Surgeons, Inc.*, No. 4:13-CV-1054, 2013 WL 4401429, at \*4 (S.D. Tex. Aug. 13, 2013) (dismissing a business disparagement claim for failing to allege "specific sources of economic loss"); *Encompass Office Solutions, Inc. v. Ingenix, Inc.,* 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011) (dismissing business disparagement claim because the complaint was conclusory as to special damages and "void of any supporting facts" to support the allegation that "[t]he publication of these statements has caused [the plaintiff] to suffer lost profits and lost good will business reputation"); *Nationwide*, 512 F.3d at 147 (affirming the dismissal of the plaintiff's disparagement claim, stating that the plaintiff "failed to provide any meaningful basis upon which to distinguish it from the defamation claim" and that the plaintiff "failed to allege any specific economic loss"); *Williams v. Ramey*, No. 14-21-00158-CV, 2022 WL 2517118, at \*7 (Tex. App.—Houston [14th Dist.] July 7, 2022, pet. dism'd) (dismissing Ramey's business disparagement claim in another case for failing to establish special damages). The business disparagement claim should be dismissed for this independent reason.

2. <u>Tortious interference with existing and prospective business relations should be dismissed because Plaintiffs fail to identify a specific contract or relationship and there is no independent tortious act.</u>

Interfering with existing and prospective business relations are separate torts. Because Plaintiffs fail to plead facts to support either claim, the claims must be dismissed.

a. <u>Existing Relations – Plaintiffs do not plead interference with an actual contract.</u>

"A claim for tortious interference with existing business relations has the following elements: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss." *Priority Design & Serv., Inc. v. Plaza*, No. SA-19-CV-00058-OLG, 2019 WL 2124677, at \*4 (W.D. Tex. May 15, 2019) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)).

Plaintiffs must plead an "actual contract with an existing client." *Id.* (dismissing claims "[b]ecause Plaintiff d[id] not identify any prospective contracts or existing business relationships with third-parties that have been jeopardized by the actions of Defendant") (collecting cases); *Greater Hous. Transp. Co. v. Uber Techs., Inc.*, CIV.A. 4:14–0941, 2015 WL 1034254, at \*18 (S.D. Tex. Mar. 10, 2015) (dismissing tortious interference claims under Texas law where the plaintiff's allegations supported only that the defendant knew generally of the "nature of their business relations" rather than "individual contracts"); *Suncoast Post-Tension, Ltd. v. Scoppa*, No. 4:13-CV-3125, 2014 WL 12596471, at \*10 (S.D. Tex. May 13, 2014) (dismissing tortious interference with existing contract where complaint did not contain any allegations that it had a contract subject to interference); *M–I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010) (holding that plaintiff failed to plead the first prong of its tortious interference with an existing contract claim where plaintiff alleged contracts with several customers but failed to allege

19

the existence of a contract with those customers).

The Complaint's failure to identify a single existing contract, client engagement, co-counsel arrangement, or funder agreement that was actually interfered with requires dismissal. The Complaint's general reference to "valid contracts and ongoing business relationships" "amount[s] to nothing more than a formulaic recitation of the elements of these causes of action, which is insufficient to state a claim under Texas law and federal pleading standards." *Plaza*, 2019 WL 2124677, at *5.

> b. Prospective Relations – Plaintiffs do not plead an independently tortious act or interference with specific relationships.

A claim for interference with prospective relations is "a different tort that is also even more difficult to prove than tortious interference with contract." *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 211 (5th Cir. 2020). It requires the following:

> (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Id.* (quoting *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). "The key distinguishing element is the second one: that the defendant must commit an independently tortious or unlawful act, not merely act with malice or other ill will." *Id.* (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). "[I]nterference with prospective business relations has never been thought to be wrongful in and of itself." *Id.* (quoting *Sturges*, 52 S.W.3d at 726). "Therefore, a defendant must do something independently unlawful or tortious ('actionable under a recognized tort')." *Id.* Independently tortious "mean[s] conduct

20

that would violate some other recognized tort duty." *Sturges*, 52 S.W.3d at 713.

First, when the basis for interference is an alleged defamatory statement—and the defendant establishes the statement is not defamatory—dismissal is proper because the interference is not "independently tortious." *Day v. Fed'n of State Med. Boards of the United States, Inc.*, 579 S.W.3d 810, 824 (Tex. App.—San Antonio 2019, pet. denied) (dismissing interference with prospective relations claim where underlying basis for interference was defamation and plaintiff failed to establish falsity) (collecting cases). That is precisely the basis alleged by Plaintiffs here: "Defendants' interference was independently tortious because it relied upon defamation, business disparagement, and unfair competition." Dkt. 1 ¶ 157. Because Unified and Stroud's statements do not constitute defamation (and thus there is no business disparagement), there is no "independently tortious" interference.

Second, Plaintiffs do not "identify clients with which it would have done business but for the defendant's conduct." *Plaza*, 2019 WL 2124677, at *4. Instead, the Complaint generally alleges Plaintiffs had the "reasonable probability of entering into additional prospective relationships." But "[a] general allegation that the defendant has interfered with existing and prospective relationships between the plaintiff and its customers 'does not allow the court to infer that [the defendant] has interfered with any specific prospective contract or client relationship.'" *Id.* (quoting *ThermoTek, Inc. v. WMI Enterprises, LLC*, No. 3:10-CV-2618-D, 2011 WL 1485421, at *8 (N.D. Tex. Apr. 19, 2011) (dismissing prospective interference claim because plaintiff did not allege actual existing or prospective contracts jeopardized)); *Ceramic Performance Worldwide, LLC v. Motor Works, LLC,* 2010 WL 234804, at *3 (N.D. Tex. Jan. 21, 2010) (dismissing prospective interference claim where "plaintiff [did] not identify any prospective contracts or business relationships with third-parties that [had] been jeopardized…");

21

*Scoppa*, 2014 WL 12596471, at \*11 (dismissing prospective interference claim for failure to identify any other prospective business clients); *Zhejiang Med. Co. v. Kaneka Corp.*, No. CV H-11-1052, 2012 WL 12893418, at \*4 (S.D. Tex. Aug. 13, 2012) (dismissing prospective interference claim because general allegation that "some" of plaintiff's potential customers refused to purchase its products was insufficient to allege a plausible claim of tortious interference). Nor have Plaintiffs alleged any causal nexus to suggest that supposed lost clients would be due to Stroud's statements as opposed to Plaintiffs' numerous sanctions awards against them. Because Plaintiffs have not identified a specific prospective customer or business relationship that has been jeopardized, the prospective interference claim must be dismissed.

3.  <u>Common-law unfair competition by wrongful conduct should be dismissed because there is no underlying tort.</u>

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *DirecTV, Inc. v. Nguyen*, No. CV H-03-1757, 2003 WL 27381297, at \*2 (S.D. Tex. Oct. 28, 2003) (quoting *Taylor Pub. v. Josten's*, 216 F.3d 465, 486 (5th Cir. 2000)). "Texas law recognizes several independent causes of action that fall within the broad scope of 'unfair competition,'" including interference with existing and prospective business relations and business disparagement. *Id.*

As a threshold matter, this is a derivative tort; that is, without an independent cause of action, the unfair competition claim fails. *Id.* (dismissing unfair competition claim where defendants "failed to state any independent tort on which an unfair competition claim can be based"); *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied) ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'"). Because Plaintiffs' claims for

22

defamation, business disparagement, and interference fail, there is no "independent tort" to support a claim for unfair competition. It must be dismissed.

In addition, and "[r]egardless of the independent tort forming the basis of an unfair competition claim, the alleged act 'must interfere with Plaintiff's ability to conduct its business.'" *Nguyen*, 2003 WL 27381297, at \*2 (quoting *Josten's*, 216 F.3d at 486). But the Complaint does not identify a single concrete instance in which Defendants' conduct interfered with Plaintiffs' ability to conduct business. Indeed, the Complaint does not allege that any specific facts showing that a client terminated an engagement, that any specific funder withdrew financing, or that any specific co-counsel declined to associate—much less that any such event was caused by Stroud's or Unified's conduct specifically, as distinct from the collective conduct of all Defendants, or Plaintiffs' own conduct. This is precisely the sort of conclusory pleading that should be dismissed. *Id.* (dismissing unfair competition claim because counterclaimants "d[id] not allege specific facts showing that [plaintiff's] conduct "interfered with [counterclaimant's] ability to conduct [their] business.").

Because the Complaint does not adequately plead an independent underlying tort, or allege specific facts that the alleged conduct interfered with Plaintiffs' ability to conduct its business, this claim should be dismissed.

4. Civil Conspiracy should be dismissed because there is no underlying tort.

"To establish a claim for civil conspiracy in Texas, a plaintiff must show: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful, overt acts; and (5) proximate damages." *Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 530 (5th Cir. 2004) (dismissing conspiracy claim). Civil conspiracy is another derivative tort. *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 493 (5th Cir. 2023); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) ("Civil conspiracy requires an

23

underlying tort that has caused damages") (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (observing that civil conspiracy is a "derivative tort," which means that "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable")).

There is no underlying tort to support civil conspiracy. The Complaint identifies the underlying torts as "defamation, business disparagement, and tortious interference." Dkt. 1 ¶ 167. As discussed, the defamation claim fails as to Stroud and Unified because the challenged statements are either literally true, substantially true, protected opinion, or privileged; the business disparagement claim fails because the Complaint does not adequately plead special damages; and the interference claims fails because the "independently tortious" conduct is entirely derivative of the defamation claim and the Complaint identifies no specific contract or relationship that was interfered with. Because all three torts should be dismissed, the conspiracy claim collapses as a matter of law.

And even if there were an independent tort, the claim must still be dismissed because Plaintiffs come nowhere close to alleging a meeting of the minds. "To sufficiently plead the existence of a meeting of the minds, the plaintiff must allege a preconceived plan or a time and place at which the defendants had a meeting of the minds regarding the object of the conspiracy." *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018) (cleaned up). "Further, the plaintiff must allege factual allegations connecting the actions of the defendants to a preconceived plan of the underlying tort." *Id.* (cleaned up). If the facts alleged do not show a preceding agreement, but "merely parallel conduct that could just as well be independent action," the conspiracy claim must be dismissed. *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (dismissing conspiracy claim).

24

The Complaint fails these standards. It does not identify any specific preconceived plan between Stroud, Unified, or any other defendant to defame Plaintiffs; it does not allege a single meeting, communication, or agreement—at any time or place—in which Stroud, Unified, Bloomberg, or RPX discussed or coordinated a campaign against Ramey; and it does not connect Stroud's LinkedIn posts or Unified's amicus brief to any plan formulated with another defendant. The Complaint's allegations of "shared narratives and talking points," "repeated cross-citation," and "common financial and competitive motives," Dkt. 1 ¶ 168(b)–(e), describe parallel conduct consistent with independent actors commenting on the same public court records—not a preconceived plan to commit the underlying tort. *Cf. Jabary*, 547 F. App'x at 610. That is precisely the type of allegation that falls short under civil-conspiracy jurisprudence.

## VI. CONCLUSION

Defendants request the Court dismiss Plaintiffs' Complaint with prejudice for failure to state a claim. Amendment would be futile. There is nothing Plaintiffs can amend in their Complaint that would change the statements made by Stroud and Unified or the bases of those statements found in the court orders sanctioning Plaintiffs. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion.").

Dated: May 6, 2026.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: */s/ Cindy A. Gierhart*
    Cindy A. Gierhart
    Cindy.Gierhart@hklaw.com
    800 17th Street N.W., Suite 1100
    Washington, D.C. 20006
    (202) 469-5416 Telephone
    (202) 955.5564 Facsimile
    ***Attorney in Charge*** *(Admitted Pro Hac Vice)*

    Brandon L. King
    Texas Bar No. 24100613
    S.D. Bar No. 3436665
    Brandon.King@hklaw.com
    98 San Jacinto Blvd., Suite 1900
    Austin, Texas 78701
    (512) 469-6126 Telephone
    (512) 472-7473 Facsimile

    Agnes Doyle
    Texas Bar No. 24084423
    S.D. Bar No. 2545474
    Agnes.Doyle@hklaw.com
    811 Main Street, Suite 2500
    Houston, Texas 77002
    (713) 244-6886 Telephone
    (713) 821-7001 Facsimile

    **COUNSEL FOR DEFENDANT UNIFIED PATENTS, LLC AND JONATHAN STROUD**

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was provided to all counsel of record in accordance with the Federal Rules of Civil Procedure on May 6, 2026.

/s/ *Brandon L. King*
Brandon L. King

27