**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **WILLIAM P. RAMEY, III AND RAMEY LLP,** | § § § | |
| **Plaintiffs,** | § § § | **Case No. 4:26-cv-01462** |
| **v.** | § § | |
| **JONATHAN STROUD; UNIFIED PATENTS, LLC; BLOOMBERG L.P.; AND RPX CORPORATION,** | § § § § § | |
| **Defendants.** | § | |

**<u>PLAINTIFF WILLIAM P. RAMEY, III AND PLAINTIFF RAMEY LLP'S RESPONSE IN OPPOSITION TO DEFENDANT UNIFIED PATENTS, LLC AND DEFENDANT JONATHAN STROUD'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

BUCKINGHAM, DOOLITTLE & BURROUGHS LLC

/s/ *Andrew C. Stebbins*
Andrew C. Stebbins (Pro Hac Vice OH#0086387)
1375 East 9th Street, Suite 1700
Cleveland, OH 44114
Email: astebbins@bdblaw.com
Telephone: 216.736.4233
Facsimile: 216.736.4233

THE BUCHANAN LAW OFFICE, P.C.

/s/ *Byron M. Buchanan*
Byron M. Buchanan (State Bar No. 00796268)
1002 Gemini, Ste 225C
Houston, TX 77058
Email: Byron@thebuchananlawoffice.com
Telephone: 713-936-0783
Facsimile: 713-583-0444
*Attorney for Plaintiffs William P. Ramey, III and Ramey LLP*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

I.      INTRODUCTION.................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 1

III.    SUMMARY OF THE ARGUMENT ................................................................... 3

IV.     LEGAL STANDARD ........................................................................................... 4

V.      LAW AND ARGUMENT ..................................................................................... 6

   A.   Plaintiffs Complaint States a Claim for Defamation ........................................... 6

      i.   *Plaintiffs have plausibly pled that Stroud published the LinkedIn posts to third parties.*
           6

      ii.  *Plaintiffs have plausibly pled that the LinkedIn posts conveyed a false gist.* ................ 7

      iii. *Plaintiffs have plausibly pled that the LinkedIn posts were published with, at*
           *minimum, negligence and/or actual malice and reckless disregard.* ...................... 8

      iv.  *Plaintiffs have plausibly pled damages as a direct result of the LinkedIn posts.* ......... 10

   B.   Defendants' Defenses to Plaintiffs' Claim for Defamation Fails...................................... 11

      i.   *The LinkedIn posts are neither true nor substantially true.*.......................................... 11

      ii.  *The LinkedIn posts are not protected expressions of opinion.* ..................................... 12

   C.   Plaintiffs have not Based any of their Claims on the Amicus Brief ................................ 14

   D.   Plaintiffs have Plausibly Pled a Claim for Business Disparagement.............................. 14

   E.   Plaintiffs have Plausibly Pled a Claim for Tortious Interference with Existing and
        Prospective Business Relations.............................................................................. 16

      i.   *Tortious interference with existing business relations* ..................................... 16

      ii.  *Tortious interference with prospective business relations* ............................................ 18

   F.   Plaintiffs have plausibly pled a claim for unfair competition by wrongful conduct......... 19

   G.   Plaintiffs have plausibly pled a claim for civil conspiracy .......................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Am. Acad. of Allergy*,
No. CV SA-14-CV-35-OLG, 2014 WL 12497080, at *12 (W.D. Tex. Sept. 8, 2014)............ 17

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)............................................................ 5

*Austin v. Inet Technologies, Inc.*,
118 S.W.3d 491 (Tex.App.-Dallas 2003) ................................................................................. 15

*Backes v. Misko*,
486 S.W.3d 7 (Tex. App. 2015)................................................................................................. 21

*Bass v. Stryker Corp.*,
669 F.3d 501 (5th Cir. 2012) ...................................................................................................... 6

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002) ....................................................................................................... 12

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
345 F.3d 347 (5th Cir.2003) ..................................................................................................... 10

*Butowsky v. Folkenflik*,
2019 WL 3712026 (E.D.Tex. Aug. 7, 2019)............................................................................. 9

*Butts v. Aultman*,
953 F.3d 353 (5th Cir. 2020) ...................................................................................................... 4

*Campbell v. Clark*,
471 S.W.3d 615 (Tex. App. 2015)............................................................................................ 13

*Carr v. Brasher*,
776 S.W.2d 567 (Tex. 1989) ..................................................................................................... 13

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
394 F.3d 285 (5th Cir. 2004) ...................................................................................................... 4

*Centennial Bank v. Holmes*,
717 F. Supp. 3d 542 (N.D. Tex. 2024) ..................................................................................... 19

*Chevalier v. Animal Rehab. Ctr., Inc.*,
839 F. Supp. 1224 (N.D. Tex. 1993) .......................................................................................... 4

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ...................................................................................................... 5

*Consultants in Pain Med., PLLC v. Ellen Boyle Duncan, PLLC*,
690 S.W.3d 739 (Tex. App. 2024) ................................................................. 7

*Crutchfield v. Match Grp., Inc.*,
529 F. Supp. 3d 570 (N.D. Tex. 2021) ........................................................... 4

*Cunningham v. Waymire*,
612 S.W.3d 47 (Tex. App. 2019) .................................................................... 6

*D Magazine Partners, L.P. v. Rosenthal*,
529 S.W.3d 429 (Tex. 2017) ..................................................................... 7, 12

*Dallas Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018) ............................................................... 6, 7, 13

*Dragon Intell. Prop LLC v. DISH Network L.L.C.*,
No. 22-1621 (Fed. Cir.) .................................................................................. 2

*Eli Lilly & Co. v. Revive Rx, LLC*,
812 F. Supp. 3d 708 (S.D. Tex. 2025) .......................................................... 20

*Gate Guard Services L.P. v. Perez*,
14 F.Supp.3d 825 (S.D.Tex. 2014) ............................................................... 10

*Hazlewood v. Netflix, Inc.*,
No. 3:23-CV-1109-N, 2023 WL 6771506, (N.D. Tex. Oct. 11, 2023) ......... 11

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
749 S.W.2d 762 (Tex. 1987) ......................................................................... 16

*Hutchinson v. Proxmire*,
443 U.S. 111, 99 S. Ct. 2675, 2688, 61 L. Ed. 2d 411 (1979) ....................... 9

*Immanuel v. Cable News Network, Inc.*,
618 F. Supp. 3d 557 (S.D. Tex. 2022) ............................................................ 8

*In re Lipsky*,
460 S.W.3d 579 (Tex. 2015) ........................................................................... 6

*Johnson v. Wells Fargo Bank, NA*,
999 F. Supp. 2d 919 (N.D. Tex. 2014) ............................................................ 4

*Jones v. United States Postal Serv.*,
690 F. App'x 147 (5th Cir. 2017) .................................................................... 5

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) ........................................................................ 5

*Kinect Solar, LLC v. Panasonic Corp. of N. Am.*,
  No. 1:20-CV-378-LY, 2020 WL 6385292 (W.D. Tex. Oct. 30, 2020) ................................... 15

*Kinetic Concepts, Inc. v. Bluesky Medical Corp.*,
  2005 WL 3068209 (W.D.Tex. Nov. 1, 2005) ........................................................................... 15

*Klentzman v. Brady*,
  312 S.W.3d 886 (Tex. App.–Houston [1st Dist.] 2009 .......................................................9, 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Banks PLC*,
  594 F.3d 383 (5th Cir. 2010) .................................................................................................... 5

*Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*,
  456 F. App'x 336 (5th Cir. 2011) .............................................................................................. 4

*Masel v. Villarreal*,
  924 F.3d 734 (5th Cir. 2019) ..................................................................................................... 4

*N. Cypress Med. Ctr. Operating Co. v. Gallagher Benefit Servs., Inc.*,
  No. 4:11-cv-685, 2012 WL 2870639 (S.D. Tex. July 11, 2012) ............................................. 19

*Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*,
  516 F. Supp. 3d 633 (W.D. Tex. 2021) ............................................................................... 17, 18

*Parker v. Spotify USA, Inc.*,
  569 F. Supp. 3d 519 (W.D. Tex. 2021).............................................................................7, 11, 13

*Paulsen v. Yarrell*,
  537 S.W.3d 224 (Tex. App. 2017)............................................................................................ 13

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
  771 F. Supp. 2d 680 (S.D. Tex. 2011) ..................................................................................... 15

*Priority Design & Serv., Inc. v. Plaza*,
  No. SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019)......................... 17

*Scripps NP Operating, LLC v. Carter*,
  573 S.W.3d 781 (Tex. 2019) .................................................................................................... 12

*Teel v. Deloitte & Touche LLP*,
  No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015).................................... 16

*Tu Nguyen v. Duy Tu Hoang*,
  318 F. Supp. 3d 983 (S.D. Tex. 2018)...................................................................................... 12

*Turner v. KTRK Television, Inc.*,
  38 S.W.3d 103 (Tex. 2000) .......................................................................................................11

iv

*United States v. Hardman*,
297 F.3d 1116 (10th Cir.2002) ............................................................................. 10

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) .................................................................................. 6

*ZYZY Corp. v. Hernandez*,
345 S.W.3d 452 (Tex. App. 2011) ........................................................................... 9

**Statutes**

35 U.S.C. § 285 ........................................................................................................ 2

Tex. Civ. Prac. & Rem. Code Ann. § 16.002 ........................................................... 6

**Rules**

Fed. R. Civ. P. 12 ............................................................................................. 1, 4, 5

Fed. R. Civ. P. 15 .................................................................................................... 22

## I. **INTRODUCTION**

Now comes Plaintiff William P. Ramey, III ("Ramey") and Plaintiff Ramey LLP ("Ramey LLP") (collectively "Plaintiffs") for their response in opposition to Defendant Unified Patents, LLC ("Unified Patents") and Defendant Jonathan Stroud's ("Stroud") (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12 (b)(6) ("Defendant's Motion").  For the reasons stated herein, Defendant's Motion should be denied as Plaintiffs have plausibly stated claims for defamation, business disparagement, tortious interference with existing and prospective business relations, unfair competition by wrongful conduct, and civil conspiracy. Accordingly, Defendant's Motion should be denied.

## II. **FACTUAL BACKGROUND**

Ramey is a Texas lawyer who, through Ramey LLP, represents small patent owners and individual inventors against the world's largest technology companies — typically on contingent fee. (Compl. ¶¶ 12–13). Patent litigation is extraordinarily expensive, and Ramey LLP is one of the very few firms willing to take such cases when the potential damages are not in the multiples of millions of dollars. (*Id.* ¶¶ 13–15). Without firms like Ramey LLP, small patent owners would have no realistic ability to enforce their patents — a point confirmed under oath by clients themselves. (*Id.* Ex. B ¶¶ 7–9).

Beginning no later than 2021, large technology companies and their aligned "patent defense" organizations — including Unified Patents, LLC and RPX Corporation and Bloomberg L.P. — launched a coordinated campaign to destroy Plaintiffs' professional reputations, drive them out of the patent-litigation market, and thereby eliminate one of the few remaining contingency-fee firms capable of representing small patent owners against Big Tech. (*Id.* ¶¶ 17–19). Defendants'

1

strategy is plain on the face of the pleadings: it is cheaper to destroy Plaintiffs than to litigate against them. (*Id.* ¶ 19).

Stroud, on behalf of Unified Patents, authored and caused to be published on PatentProgress.org — a Big Tech advocacy site operated by the Computer & Communications Industry Association — a blog post identifying Ramey as "Exhibit A" of frivolous non-practicing-entity litigation. (*Id.* ¶¶ 21–24). The Blog made multiple flatly false factual assertions, including that Ramey was "[a] former drunk-driving billboard defense lawyer." Ramey has never operated a billboard-based DWI or personal-injury practice. (*Id.* ¶ 25(a)). Stroud invented this biographical detail to ridicule and stigmatize Ramey by associating him with a low-brow advertising practice. The Blog also falsely asserted that Ramey "filed thousands" of patent suits over the prior decade. Public dockets show the actual number was a fraction of that figure. (*Id.* ¶ 25(b)). Stroud also labeled Ramey "Exhibit A" of a practice "bound to violate ethical and court rules." (*Id.* ¶¶ 25(c), 26).

On August 20, 2024, Stroud and Unified filed an amicus brief in *Dragon Intell. Prop LLC v. DISH Network L.L.C.*, No. 22-1621 (Fed. Cir.), on whether 35 U.S.C. § 285fees can extend to counsel. (*Id.* ¶ 29; Ex. E to the Complaint). The legal question was statutory — abstract, rule-based, applicable to every patent case. The brief did not need to single out any individual lawyer involved in the case. Nonetheless, it singled out Ramey, naming him repeatedly, reciting a partial and inflammatory account of fee awards, and characterizing his practice in defamatory terms. (Compl. ¶ 29). Ramey was not a party to *Dragon IP*. He was not Dragon's counsel. He had no involvement, whatsoever, in the case.

Throughout 2025, Stroud published numerous LinkedIn posts —many before the *Koji IP* and *EscapeX* orders existed — which repeatedly framed Ramey's practice as a "saga," sneering

"another day, another award," tagging the United States Patent and Trademark Office with calls for regulatory action, and explicitly inviting disbarment. (*Id.* ¶¶ 30–31; Ex. F to the Complaint). The cumulative gist is unmistakable: Ramey is a serial wrongdoer; he flouts ethical rules, and he should be disbarred. (Compl. ¶ 31).

Defendants do not act in isolation: Stroud cites Bloomberg, Bloomberg cites Stroud and RPX, and RPX repeats Bloomberg and Stroud's themes. (*Id.* ¶¶ 99–105, 118, 168). Stroud's accusations to a Bloomberg reporter, Ramey is "financially incentivized to not look into his complaints, to file cases against the wrong party, [and] to be sloppy," became the core quote in Bloomberg's February 2025 Article.  (*Id.* ¶ 72). Bloomberg's article was then cited in Stroud's LinkedIn posts, which were then cited by RPX, which were then cited by opposing counsel in subsequent sanctions motions. (*Id.* ¶¶ 46, 99–101).

Plaintiffs have lost institutional clients (the University of Texas System and the University of Houston, identified by name in Bloomberg's own article, Ex. A to the Complaint at pg. 14); been denied litigation funding by investors who "expressly cit[ed] the negative press and sanctions narrative promoted by Defendants," (Compl. ¶ 119); suffered increased defense and appellate costs driven by the toxic environment Defendants created; and suffered severe reputational harm in the judiciary, patent bar, and client community. (*Id.* ¶ 119).

## III.  <u>SUMMARY OF THE ARGUMENT</u>

Defendants' Motion argues that Plaintiff's claim for defamation is time barred, that Stroud's LinkedIn posts are true or, at minimum, substantially true, and are protected expressions of opinion.  Defendant's Motion further argues that Plaintiffs' claims for business disparagement, tortious interference, unfair competition, and civil conspiracy should be dismissed because they are derivative of Plaintiffs' failing defamation claim.  These arguments are, however, unavailing.

3

Plaintiffs' defamation claim is premised upon Stroud's LinkedIn posts which were all published within the last year.  Thus, Plaintiffs' defamation claim is not time barred.  Additionally, Stroud's LinkedIn publications are not true, or even substantially true, and are not protected expressions of opinion as the posts imply unstated false facts.  Since Plaintiffs have plausibly pled a defamation claim, the remaining claims for business disparagement, tortious interference, unfair competition, and civil conspiracy are viable.

## IV.  LEGAL STANDARD

"A motion under Rule 12(b)(6) tests the legal sufficiency of claims stated in the complaint and must be evaluated solely on the basis of the pleadings." *Chevalier v. Animal Rehab. Ctr., Inc*., 839 F. Supp. 1224, 1230 (N.D. Tex. 1993).  "The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F.3d 285, 288 (5th Cir. 2004).  "A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 925 (N.D. Tex. 2014).  "[W]hen considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par*., 456 F. App'x 336, 340 (5th Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Butts v. Aultman*, 953 F.3d 353, 357 (5th Cir. 2020); quoting *Masel v. Villarreal*, 924 F.3d 734, 742–43 (5th Cir. 2019).  "At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted." *Crutchfield v. Match Grp., Inc., 529 F. Supp. 3d 570, 588 (N.D. Tex. 2021).  "The United States Court of

4

Appeals for the Fifth Circuit has established two primary considerations for a court's analysis under Rule 12(b)(6). First, the court must accept as true all well-pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff; however, the court will not accept conclusory allegations as true." *Chevalier*, 839 F. Supp. 1224, 1230 (N.D. Tex. 1993); citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). "Second, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Id.*; citing *Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045 at 1050 "A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 at 498 (5th Cir. 2000); quoting *Kaiser Aluminum & Chem. Sales,* 677 F.2d 1045 at 1050.

"For a complaint to be valid, it must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Jones v. United States Postal Serv.*, 690 F. App'x 147, 149 (5th Cir. 2017); quoting Fed. R. Civ. Pro. 8(a)(2). "[T]his standard does not require 'detailed factual allegations,' it does demand more than conclusory statements or 'threadbare recitals' of the elements of a particular cause of action." *Id.*; quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "The core objective when reviewing the sufficiency of a complaint is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible.'" *Id.*; quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Banks PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; quoting *Iqbal*, 556 U.S. 662 at 678. "Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has

5

failed to raise his right to relief above the speculative level." *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).

## V.  LAW AND ARGUMENT

### A.  Plaintiffs Complaint States a Claim for Defamation

"Texas law establishes the following elements to state an actionable claim of defamation: (1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019); citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).  Further, all defamation claims must be pursued "not later than one year after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a).

As stated in the Complaint, Plaintiffs' defamation claim is premised upon Stroud's LinkedIn posts.  (Compl. at ¶¶ 124-128, 136-137).  Thus, Plaintiffs' defamation claim is timely, and Defendant's Motion should be denied as Plaintiffs have plausibly pled all elements for their defamation claim.

### i.   Plaintiffs have plausibly pled that Stroud published the LinkedIn posts to third parties.

"Publication of a false statement of fact to a third party is a threshold requirement for proving defamation." *Cunningham v. Waymire*, 612 S.W.3d 47, 60 (Tex. App. 2019); citing *Dallas Morning News, Inc.*, 554 S.W.3d 614 at 623.  Plaintiffs have demonstrated through the Complaint that Stroud published numerous posts to LinkedIn during the course of 2025.  (Compl. at ¶ 124.) Stroud tagged the United States Patent and Trademark Office ("USPTO") to draw further attention to his LinkedIn posts and to further spread his LinkedIn posts on a large scale.  (*Id.* at ¶¶ 127-128).

6

Therefore, Plaintiffs have plausibly pled that Defendant published the Defamatory Articles to third parties.

### ii. Plaintiffs have plausibly pled that the LinkedIn posts conveyed a false gist.

"A publication's meaning, and thus whether it is false and defamatory, depends on a reasonable person's perception of the publication's entirety and not merely on individual statements." *Consultants in Pain Med., PLLC v. Ellen Boyle Duncan, PLLC*, 690 S.W.3d 739, 757 (Tex. App. 2024), review denied (Nov. 15, 2024). "Whether a publication is reasonably capable of a defamatory meaning is an objective inquiry, and the determination is a question of law, unless the publication's language is ambiguous." *Id.* "When determining whether a publication is capable of a defamatory meaning, we examine its 'gist.'" *Id.*; citing *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). "'Gist' refers to a publication or broadcast's main theme, central idea, thesis, or essence." *Id.*; quoting *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 629 (Tex. 2018). "[E]ven if all the publication's individual statements are literally true, the story can convey a false or defamatory meaning by omitting or juxtaposing facts." *Id.*; citing *Rosenthal*, 529 S.W.3d 429 at 434. "If a statement is ambiguous, and thus it is not objectively reasonably capable of a defamatory meaning, then it is the responsibility of the jury to determine what the statement means." *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 528 (W.D. Tex. 2021); citing *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018).

The statements that Plaintiffs allege create a false gist are:

- "Another day, another award. Here, false allegations in the complaint, among with another laundry list of violations. The award this time was $124,000; it is added to more than a dozen, at least three this calendar year. Still in good standing with the bar, still in possession of a USPTO registration number, still no action taken to deter the conduct." (Compl. at ¶ 30(a); Exhibit F).

7

- "Coming on the heels of a $200k, $100k+, and $90k sanction/fee award in the last few months, this attorney---who is still listed as in good standing with no disciplinary action in Texas and at the USPTO---can add another $45k sanction to the pile. He appeared in 56 matters listing as pro hac in California, and only bothered to actually seek it in 10. Per this order, the attorneys must self report to their own bars (which they are already under an obligation to do). I think we can assume that hasn't been happening. This entire saga demonstrates how toothless bar discipline and ethical enforcement have gotten in patet [sic] law. This has been going on for a decade."  (Compl. at ¶ 30(b); Exhibit F).

- "To be clear, this order is limited to the pro hac issue. There are other sanctions pending in this case related to the repeated baseless filings (there, to be exact) against the same party for the same patent."  (Compl. at ¶ 30(b)(i); Exhibit F).

- "Endlessly fascinating saga right here. Nineteen awards!" (Compl. at ¶ 30(c); Exhibit F).

- "[t]he state bar disciplinary authorities need to take a much harder stance against these sort of behaviors." [tagging the USPTO].  (Compl. at ¶ 30(c)(i); Exhibit F).

As stated in the Complaint, Stroud's LinkedIn posts conveyed the false gist that there is a saga surrounding Plaintiff Ramey because he continuously violates the rules, is unethical, and does not report to his state bar.  (Compl. at ¶ 125).  Certainly, a reasonable person would understand the essence of the statements to be disparaging as claiming that an attorney has been repeatedly sanctioned, on virtually a daily basis, without any intervention of the bar and continuously violates the rules is highly defamatory and damaging to a lawyer's professional and personal reputation. Thus, Plaintiffs have plausibly pled that the LinkedIn posts conveyed a false gist.

> ### iii. Plaintiffs have plausibly pled that the LinkedIn posts were published with, at minimum, negligence and/or actual malice and reckless disregard.

Generally, a private plaintiff needs to plausibly allege facts that a defendant published a statement with negligence while a public figure must plead that a defendant published a statement with actual malice. *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 562 (S.D. Tex. 2022).

8

Here, the allegations in the Complaint, when presumed to be true and viewed in a light most favorable to Plaintiffs, do not establish Plaintiffs are public figures – limited purpose or otherwise-as a matter of law such that Plaintiffs would be required to plead actual malice. *See, e.g. Butowsky v. Folkenflik*, 2019 WL 3712026, *18 (E.D.Tex. Aug. 7, 2019) (analyzing, under a 12(b)(6) standard, whether facts were sufficient to demonstrate the plaintiff was a limited purpose public figure). The allegations in the Complaint, viewed in a light most favorable to Plaintiffs, are that Plaintiffs are in a niche legal practice, that they are (effectively) competitors of the Defendants, and that Defendants were actively working to *create* a public controversy about Plaintiffs to destroy their business through negative publications. (See Compl. ¶¶ 12-19). No facts are plead to reflect the existence of the type of *pre-existing public controversy* required to create public figure status or, more pointedly, that Plaintiffs "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved...." *Klentzman v. Brady*, 312 S.W.3d 886, 897, 904 (Tex. App.–Houston [1st Dist.] 2009, no pet.)Plaintiffs do not become public figures because they advocate on behalf of clients. "A lawyer does not become a public figure merely because he "undertake[s] to represent clients in difficult, unpopular, high profile, or sensational types of cases," or advocates for a famous or controversial client. " *ZYZY Corp. v. Hernandez*, 345 S.W.3d 452, 458 (Tex. App. 2011). Likewise, an attorney does not relinquish private figure status because they respond to press inquiries regarding matters impacting clients. *See Id.* at 461-462. Additionally, a defendant charged with defamation "cannot, by their own conduct, create their own defense by making the claimant a public figure." *See Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S. Ct. 2675, 2688, 61 L. Ed. 2d 411 (1979). As the allegations of the Complaint, viewed most favorable to Plaintiffs do not support limited purpose public figure status as a matter of law. Plaintiffs were only required to plausibly plead negligence, which they

9

have done: Plaintiffs plausibly pled that Stroud published the LinkedIn posts with, at minimum, negligence as Stroud, general counsel for Unified Patents, surely knew that the sanctions orders which he posted about Plaintiffs were not final yet published commentary as if they were final orders.  (Compl. at ¶ 139).

Further, this Court should ignore the Unified Defendants' limited purpose public figure and actual malice "argument" for dismissal under Rule 12(b)(6). The Unified Defendants' "argument" is (1) relegated to a footnote, (2) reliant on co-defendants' arguments that are "incorporated by reference", and (3) lacks citation to any actual allegations in the Complaint. This- is the very type of perfunctory "argument" that can and should be disregarded by the Court.  *See e.g. Gate Guard Services L.P. v. Perez*, 14 F.Supp.3d 825, 833 (S.D.Tex. 2014)("an argument raised in a footnote is insufficient and may be disregarded by the Court") citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n. 7 (5th Cir.2003) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir.2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.")).

However, even if this Court were to find that Plaintiffs are limited purpose public figures and required to plead "actual malice," Plaintiffs did so. Plaintiffs plead that the Unified Defendants published content with actual malice or reckless disregard for the truth and include factual allegations from which reasonable inferences can certainly be drawn that Defendants were, at minimum, acting with reckless disregard as to the truth or falsity of the statements they were making, making and motivated, in part, by driving Plaintiffs out of business. . (*Id.* at ¶¶ 20-32, 140-142). Accordingly, while this Court should not find as a matter of law that Plaintiffs are limited purpose public figures, even if it does, Plaintiffs have sufficiently pled the requisite standard of fault for purposes of stating a claim.

> ### iv.  *Plaintiffs have plausibly pled damages as a direct result of the LinkedIn posts.*

10

The requirement of pleading injury and damages has been established, as Plaintiffs have plausibly pled: (1) the publications are defamatory per se, as the defamatory gist  is that Plaintiffs are engaged in unethical conduct in their representative capacity as attorneys (Comp. at ¶ 138), and, thus, there is no requirement to plead special damages, (2)  Plaintiffs plausibly pled general damages for past and ongoing reputational harm and a toxic professional environment in which courts and opposing counsel treat them as pre-branded bad actors, (3) economic or special damages resulting from loss of client and funder relationships, and increased sanctions-related and appellate burdens. (Compl. at ¶ 143). Thus, even if the publications were considered to be defamatory per quod versus per se, Plaintiffs have met the requisite pleading requirements of alleging the existence of plausible special damages. See e.g. *Hazlewood v. Netflix, Inc*., No. 3:23-CV-1109-N, 2023 WL 6771506, at *3 (N.D. Tex. Oct. 11, 2023).  ("Defamation per quod requires a pleading of special damages, [citation], but like any element these damages need only to be plausible, not proven, at this stage.")  Therefore, Plaintiffs have plausibly pled that they sustained damages as a direct result of Stroud's LinkedIn posts.

### B.  Defendants' Defenses to Plaintiffs' Claim for Defamation Fails

#### i.   *The LinkedIn posts are neither true nor substantially true.*

"The truth of a statement is an absolute defense to a claim for defamation."  *Parker*, 569 F. Supp. 3d 519 at 529; quoting *Klentzman v. Brady*, 312 S.W.3d 886, 898 (Tex. App.—Houston [1st Dist.] 2009).  "[A] true accounting is not actionable regardless of what someone may infer *unless* it creates a false and defamatory impression by omitting or juxtaposing facts in a misleading way. *Id.*; citing *Klentzman*, 312 S.W.3d 886 at 898 (emphasis added).  Further, the "substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in details." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). "The

11

test used in deciding whether a broadcast [or publication] is substantially true involves consideration of whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener [or reader], than a truthful statement would have been." *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1007 (S.D. Tex. 2018).

The substantial-truth arguments for the LinkedIn posts ignore the legal theory the Complaint actually pleads. Plaintiffs do not claim every word of every post is independently false. They plead that the *cumulative gist* — "that Ramey should be disciplined or disbarred, that Plaintiffs' cases are meritless, and that Plaintiffs are sloppy and sue the wrong party while being financially incentivized not to investigate claims" – is far more damaging than a truthful account would have been. (Compl. at ¶¶ 117, 136). Again, "courts analyze the gist of the publication 'as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.'" *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019) quoting *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). A series of statements made by the same defendant, about the same general topic, and in the same media forum should be analyzed to together. *Scripps*, 573 S.W.3d 781 (affirming that articles on same subject in newspaper should be construed together for purposes of determining defamatory meaning) ; *Bentley v. Bunton*, 94 S.W.3d 561, 584 (Tex. 2002) (performing analysis based upon series of statements made over a nearly eight month span on local access show). The truth is that Defendant Stroud created this "saga" and he cannot allege the defense of substantial truth based on his fabricated saga. (*Id.* at ¶¶ 125-126).  Therefore, Defendants' substantial truth defense fails.

### ii.    The LinkedIn posts are not protected expressions of opinion.

"All assertions of opinion are protected by the First Amendment of the United States Constitution and article I, section 8 of the Texas Constitution."  *Paulsen v. Yarrell*, 537 S.W.3d

12

224, 235 (Tex. App. 2017); quoting *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). "Whether a statement is a constitutionally protected opinion or an actionable statement of fact is a question of law." *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App. 2015). A two-part test is used to determine whether a statement is an opinion: can the statement be verified and does the context disclose that the statement was not intended to assert a fact. *Parker*, 569 F. Supp. 3d 519 at 529. "A statement that fails either test—verifiability or context—is called an opinion." *Id.*; quoting *Dallas Morning News, Inc.*, 554 S.W.3d 614, 638 (Tex. 2018).

Defendants contend that the following statements from the LinkedIn posts are opinion:

- "[e]ndlessly fascinating saga." (Dkt. No. 32, Defendant's Motion at pg. 11, Section V.C.3.)

- "[t]his entire saga demonstrates how toothless bar discipline and ethical enforcement have gotten in patet [sic] law." (*Id.*)

- [Regarding self-reporting sanctions to the Texas bar] "I think we can assume that hasn't been happening" (*Id.*)

- "[a]nother day, another award." (*Id.*)

- [While tagging the USPTO] "[t]he state bar disciplinary authorities need to take a much harder stance against these sort of behaviors." (*Id.*)

Again, the analysis of the statements requires consideration of all surrounding circumstances and with consideration of how a reasonable reader would construe them in light of the context. The allegations in the Complaint reflect that Stroud, general counsel for United Patents made repeated statements in the same forum, LinkedIn, asserting that Plaintiff had definitively engaged in unethical conduct that could be – and, a reasonable inference can be drawn, *had been* – reported to bar authorities. A reasonable reader would understand Stroud to be familiar with the relevant ethical rules and subject to the same and, considering his ongoing attention to Plaintiffs, familiar with underlying facts that would support allegations that such ethical misconduct had occurred and comprised the purported "saga." In sum, a reasonable reader would assume that an attorney in the

13

same field would be conveying relevant facts about a fellow member of the bar and that his statements are verifiable, not hyperbolic or expressions of opinion about what should be done or what the ethical rules should be punish. These statements are not protected expressions of opinion and a reasonable reader would understand that Stroud was making verifiable statements of fact regarding misconduct by Plaintiffs – misconduct that could be definitively determined to be true or false.

### C. Plaintiffs have not Based any of their Claims on the Amicus Brief

Defendants have devoted a substantial section of their Motion to argue that statements in the amicus brief are absolutely privileged under the judicial proceedings privilege. Plaintiffs' Complaint contained a single sentence about the amicus brief to provide a factual background regarding Defendants' incessant need to defame Plaintiffs. (Compl. at ¶ 29). However, none of Plaintiffs' claims are predicated upon the amicus brief. Thus, Defendants' arguments regarding privilege are irrelevant.

### D. Plaintiffs have Plausibly Pled a Claim for Business Disparagement

"A business disparagement claim requires proof of: '(1) publication by the defendant of false and disparaging words about the plaintiff; (2) malice; (3) lack of privilege; and (4) special damages to the plaintiff.'" *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 702 (S.D. Tex. 2011); quoting *Kinetic Concepts, Inc. v. Bluesky Medical Corp.,* 2005 WL 3068209, at *4 (W.D.Tex. Nov. 1, 2005). "The term "publication" as used in this context means to be 'communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand.'" *Id.*; quoting *Austin v. Inet Technologies, Inc.,* 118 S.W.3d 491, 496 (Tex.App.-Dallas 2003).

14

Defendants contend that because Defendant Stroud's statements were true they cannot support a business disparagement claim.  (Defendant's Motion at pg. 17, Section V.E.1).  As established in Section a, Defendant Stroud published the LinkedIn posts which conveyed a false gist and did not constitute a protected expression of opinion.  Contrary to Defendants' assertions, a false gist can act as the basis for a business disparagement claim.  See *Kinect Solar, LLC v. Panasonic Corp. of N. Am.*, No. 1:20-CV-378-LY, 2020 WL 6385292 (W.D. Tex. Oct. 30, 2020), report and recommendation adopted in part, No. 1:20-CV-378-LY, 2020 WL 10054586 (W.D. Tex. Nov. 17, 2020).  Further, as expounded upon in Section a, the LinkedIn posts were published with malice.  "In the context of a tort such as business disparagement or injurious falsehood, only absolute privileges have relevance to the defendant. This is because the tort itself incorporates malice as an element of recovery; hence, if the plaintiff carries his burden, he likewise defeats any conditional privilege." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987).  Clearly publishing posts to LinkedIn does not constitute a qualified privilege.   Since Plaintiffs have properly pled that Defendant Stroud published the LinkedIn posts with malice, the lack of privilege element had been properly pled.

Finally, Defendants assert that Plaintiffs have not met their burden by properly pleading special damages and assert that the Complaint relies on conclusory statements.  (Defendant's Motion at pg. 17-18, Section V.E.1).  "Proof of special damages...requires that plaintiff establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales." *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *6 (N.D. Tex. Dec. 29, 2015); quoting *Hurlbut*, 749 S.W. 2d at 767.  The statements from the Complaint are not conclusory.  As stated in the Complaint, "Plaintiffs suffered special damages, including but not limited to specific lost clients, funding refusals, and litigation opportunities that can be proven at trial." (Compl. at ¶

15

151).  This statement was further expounded upon in the fact section of the Complaint where it was stated, "Plaintiffs have suffered significant injury, including loss of existing clients and matters, including institutional clients who departed after negative media coverage of Ramey, loss of prospective clients who refused to engage Plaintiffs after encountering these publications, denial or loss of litigation funding and financing, with funders expressly citing the negative press and sanctions narrative promoted by Defendants, increased defense and appeal costs in sanctions proceedings, fueled and justified in part by Defendants' false narrative..." (*Id.* at ¶ 119).[1]  These statements are sufficient to demonstrate that Plaintiffs' economic losses due to lost clients, funding refusals, and lack of litigation opportunities are attributed to the LinkedIn posts as funders directly cited the negative press that Plaintiffs have been receiving.  Therefore, Plaintiffs have properly pled a claim for business disparagement.

### E. Plaintiffs have Plausibly Pled a Claim for Tortious Interference with Existing and Prospective Business Relations

#### i. *Tortious interference with existing business relations*

Defendants argue that Plaintiffs claim for tortious interference with existing business relations must be dismissed because Plaintiffs did not plead interference with an actual contract. (Defendant's Motion at pg. 19-20, Section V.E.2.a).  "A claim for tortious interference with existing business relations has the following elements: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss." *Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 659 (W.D. Tex. 2021); quoting *Priority Design & Serv., Inc. v. Plaza*, No. SA-19-CV-00058-OLG, 2019 WL 2124677, at *4 (W.D.

---

[1] All paragraphs from the Statement of Facts Section of the Complaint were incorporated by reference to Plaintiffs' claim for business disparagement.  (*See* Compl. at ¶ 147).

16

Tex. May 15, 2019).  At the motion to dismiss stage, a plaintiff "need only provide a short and plain statement showing a plausible right to relief." *Acad. of Allergy & Asthma in Primary Care v. Am. Acad. of Allergy*, No. CV SA-14-CV-35-OLG, 2014 WL 12497080, at *12 (W.D. Tex. Sept. 8, 2014).  Examples where contracts with groups have been interfered with are sufficient.  See *Nestle USA, Inc.*, 516 F. Supp. 3d 633 at 659 (the court found that plaintiff sufficiently pled a tortious interference with existing business relations claim as the plaintiff identified groups of entities which it has an existing business contractual relationship.  The language of the First Amended Complaint stated, plaintiff has an "existing economic relationships with each of its existing customers."  These customers included distributors).

Similar to *Nestle*, Plaintiffs have properly pled an existing contract by referring generally to groups – clients and funders.  As stated in the Complaint, "Plaintiffs had valid contracts and ongoing business relationships with clients, co-counsel and funders…"  (Compl. at ¶ 154). Plaintiffs' clients include "small patent owners, individual inventors, and patent monetization entities…" (*Id.* at ¶ 12).[2]  The Complaint also described Plaintiffs' relationship with their clients – Plaintiffs represent these clients, often on a contingent fee basis, against some of the largest technology companies in the world. (*Id.*).  The Complaint states that Plaintiffs' institutional clients departed after the negative media coverage and that funders denied and stopped funding Plaintiffs. (*Id.* at ¶ 119).

As stated in Section a, Plaintiffs have already demonstrated that Defendant Stroud's LinkedIn posts constitute a willful and intentional act of interference with these contracts.  The false gist from the LinkedIn posts relayed the notion that Plaintiff Ramey continuously violates the rules, is unethical, and does not report to his state bar.  (Compl. at ¶ 125).  Defendant Stroud

---

[2] All paragraphs from the Statement of Facts Section of the Complaint were incorporated by reference to Plaintiffs' claims for tortious interference with existing and prospective business relations.  (*See* Compl. at ¶ 153).

intentionally published the LinkedIn posts to interfere with these client and funder relationships because he desired to force Plaintiffs out of the patent-litigation market. (*Id.* at ¶ 17, 156.) Defendant Stroud intentionally interfered with Plaintiffs' client and funder relationships because he wanted to eliminate a competitor and thereby benefit Unified Patents' "aligned 'patent defense' organizations." (*Id.* at ¶ 17, 19.) Defendant's intentional act of published with LinkedIn posts in fact attained his goal – Plaintiffs lost clients and funders. (*Id.* at ¶ 119.) Loss of clients and funders resulted in lost fees, lost cases, reduced case pipeline, and impaired ability to obtain funding. (*Id.* at ¶ 158.) Therefore, Plaintiffs have properly pled a claim for tortious interference with existing business relations.

### ii. *Tortious interference with prospective business relations*

Defendants argue that Plaintiffs claim for tortious interference with prospective business relations must be dismissed because Plaintiffs' failed to establish an independently tortious or unlawful act and because Plaintiffs' did not identify clients with which it would have done business but for Defendants conduct. (Defendant's Motion at pg. 20-22, Section V.E.2.b). "To assert a claim for tortious interference with prospective relations, a plaintiff must demonstrate that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 580 (N.D. Tex. 2024). "[A] plaintiff need not 'prove that the contract would certainly been made but for the interference.'" *Id.*; quoting *N. Cypress Med. Ctr. Operating Co. v. Gallagher Benefit Servs., Inc.*, No. 4:11-cv-685, 2012 WL

18

2870639, at *7 (S.D. Tex. July 11, 2012).  "Prospective relations covered by this tort include 'continuing business relations not amounting to a formal contract.'" *Id.*

Through the Complaint, Plaintiffs state they had a "reasonable probability of entering into additional prospective relationships." (Compl. at ¶ 154).  Plaintiffs base this reasonability on the fact that they already had valid contracts and ongoing relationships with clients and funders and anticipated continuing these relationships.  (*Id.*)  Further, as expounded upon in Section e.i., Defendant Stoud published the LinkedIn posts because he intended to interfere with Plaintiffs' client and funder relationships because he wanted to eliminate a competitor and thereby benefit Unified Patents' "aligned 'patent defense' organizations." (*Id.* at ¶ 17, 19.)  The publication of these LinkedIn posts constituted independently tortious or unlawful conduct because the LinkedIn posts constitute defamation.  Defendant's intentional act of published with LinkedIn posts in fact attained his goal – Plaintiffs lost clients and funders.  (*Id.* at ¶ 119.)  Loss of clients and funders resulted in lost fees, lost cases, reduced case pipeline, and impaired ability to obtain funding.  (*Id.* at ¶ 158.)  Therefore, Plaintiffs have properly pled a claim for tortious interference with prospective business relations.

### F. Plaintiffs have plausibly pled a claim for unfair competition by wrongful conduct

Defendants assert that Plaintiffs' claims for unfair competition by wrongful conduct should be dismissed because it is premised upon Plaintiffs' failing defamation claim and because Plaintiffs have not alleged Defendants' conduct interfered with Plaintiffs' ability to conduct business. (Defendants' Motion at pg. 22-25, Section V.E.3).  "To state an unfair-competition claim, plaintiffs must allege (1) an illegal act by the defendant that (2) interfered with the plaintiff's ability to conduct its business." *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 723 (S.D. Tex. 2025).

19

As demonstrated in Section a, Plaintiffs have plausibly pled a defamation claim.  Further, as elaborated upon in Section d, Defendants conduct interfered with Plaintiffs' ability to conduct business as the LinkedIn posts caused Plaintiffs to lose clients, funding, and litigation opportunities. (Compl. at ¶ 151). Due to Defendant Stroud's LinkedIn posts, Plaintiffs institutional clients departed and funders refused and/or stopped funding Plaintiffs.  (*Id.* at ¶ 119).  Losing clients and funding has had a significant economic impact on Plaintiffs.  (*Id.* at ¶ 164).  Therefore, Plaintiffs have plausibly pled a claim for unfair competition by wrongful conduct.

### G.  Plaintiffs have plausibly pled a claim for civil conspiracy

Finally, Defendants assert that Plaintiffs' claim for civil conspiracy should be dismissed because there is no underlying tort to support civil conspiracy and because Plaintiffs have failed to allege a meeting of the minds.  (Defendants' Motion at pg. 23-25, Section V.E.4).  "The essential elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."  *Backes v. Misko*, 486 S.W.3d 7, 27 (Tex. App. 2015).  "The object to be accomplished must be either an unlawful purpose or a lawful purpose to be achieved by unlawful means."  *Id.*  Further, "[a] civil conspiracy claim may be proved by circumstantial evidence and reasonable inferences from parties' actions."  *Id.*

As stated in the Complaint, Plaintiffs stated that Defendant Stroud, Unified Patents, Defendant Bloomberg L.P., and Defendant RPX Corporation "acting individually and through their agents, knowingly agreed and combined to accomplish unlawful purposes, including defamation, business disparagement, and tortious interference, or to accomplish lawful purposes by unlawful means." (Compl. at ¶ 167).  Further, based on reasonable inferences from the parties' actions, there was a meeting of the minds.  The "coordinated action [is] evidenced by: [s]hared

narratives and talking points across publications and platforms; [r]epeated cross-citation and amplification of one another's attacks on Plaintiffs (e.g., the Stroud Article, the Bloomberg Articles, and the RPX Articles RPX repeating the same themes); [c]oordinated use of court filings and hearing transcripts to fuel media attacks and sanctions motions in multiple cases; and [c]ommon financial and competitive motives to reduce the availability of counsel for small patent owners and thereby reduce patent-enforcement risk for large technology companies." (*Id.* at ¶ 168(a-d)).  As expounded upon in the preceding Sections, Plaintiffs have plausibly pled claims for defamation, business disparagement, and tortious interference with existing and prospective business relations which demonstrates that Plaintiffs properly pled that Defendants committed one or more overt tortious acts.  (*Id.* at ¶ 169).  Lastly, Plaintiffs pled that they suffered damages as a direct and proximate result of the conspiracy.  (*Id.* at ¶ 170).  Thus, Plaintiffs have plausibly pled a claim for civil conspiracy.

## VI.  <u>CONCLUSION</u>

For these reasons, the Court should deny Defendants' Motion. However, if the Court is inclined to grant any portion of Defendants' Motion, it should do so without prejudice and grant Plaintiff leave to amend the Complaint, consistent with the liberal standard favoring amendment and the strong preference for resolving disputes on the merits.  *See* Fed. R. Civ. P. 15.  Allowing amendment here would permit clarification and supplementation of the pleadings, cure any perceived deficiencies, and advance efficient adjudication, all without undue delay or prejudice to Defendant, who will face no meaningful expansion of discovery or change in litigation posture from a timely, targeted amendment.

Dated: June 10, 2026

BUCKINGHAM, DOOLITTLE & BURROUGHS LLC

/s/ *Andrew C. Stebbins*

Andrew C. Stebbins (Pro Hac Vice OH#0086387)
1375 East 9th Street, Suite 1700
Cleveland, OH 44114
Email: astebbins@bdblaw.com
Telephone: 216.736.4233
Facsimile: 216.736.4233


THE BUCHANAN LAW OFFICE, P.C.

*/s/ Byron M. Buchanan*

Byron M. Buchanan (State Bar No. 00796268)
1002 Gemini, Ste 225C
Houston, TX 77058
Email: Byron@thebuchananlawoffice.com
Telephone: 713-936-0783
Facsimile: 713-583-0444

*Attorney for Plaintiffs William P. Ramey, III and Ramey LLP*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served by operation of the Court's CM/ECF system to all counsel of record on this 10th day of June 2026.

/s/ *Andrew C. Stebbins*
Andrew C. Stebbins (Pro Hac Vice OH#0086387)

*Attorney for Plaintiffs William P. Ramey, III and Ramey LLP*

4899-0107-2052, v. 2

23